STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. JOHN
MILLER, DEFENDANT-RESPONDENT.

Argued March 17, 1987—Decided July 21, 1987.

*Richard W. Berg,* Deputy Attorney General, argued the cause for appellant (*W. Cary Edwards,* Attorney General of New Jersey, attorney).

*Carolyn Anita Parks,* Assistant Deputy Public Defender, argued the cause for respondent (*Alfred A. Slocum,* Public Defender, attorney).

The opinion of the Court was delivered by

STEIN, J.

This case requires the Court to focus on the standards for determining whether separate offenses must merge upon conviction and those determining whether consecutive sentences may be imposed on unmerged offenses. Specifically, we must resolve whether defendant's convictions for aggravated sexual assault, *N.J.S.A.* 2C:14–2a(1), and child endangerment, *N.J.S.A.* 2C:24–4a, should merge, and if merger is not required, whether consecutive sentences for these offenses may be imposed. The trial court found that merger of these convictions was inappropriate, and ordered consecutive sentences for the two offenses. Deciding that merger was required, the Appellate Division reversed and vacated the consecutive sentence for endangering the welfare of a child. Because we disagree with the Appellate Division's decision to merge the offenses, we reverse. However, due to the absence of an adequate statement of reasons for the trial court's decision to sentence consecutively, we cannot reinstate the sentence vacated by the Appellate Division decision. We therefore remand for resentencing.

I

The incidents leading to the convictions in this case occurred in April 1984. During a weekend of visitation, the defendant sexually assaulted his five-year-old daughter. The offensive conduct first occurred in the course of a card game during which both the victim and her father shed their clothing. The defendant then proceeded to assault his daughter, performing several sexual acts upon her. The defendant also induced his daughter to play another sexual "game" later in the weekend.

On the basis of in-court testimony by the victim, a jury convicted the defendant of two counts of aggravated sexual assault, in violation of *N.J.S.A.* 2C:14–2a(1); one count of sexual assault, in violation of *N.J.S.A.* 2C:14–2b; one count of endangering the welfare of a child, in violation of *N.J.S.A.*

2C:24–4a; and one count of child abuse, in violation of *N.J.S.A.* 9:6–3.

At sentencing, the trial court merged the sexual assault count into the aggravated sexual assault convictions, and merged the child abuse conviction into the conviction for endangering the welfare of a child.[1] The court sentenced the defendant to concurrent sentences of twenty years with ten years of parole ineligibility on the aggravated sexual assault counts. The sentence was to be served at the Adult Diagnostic and Treatment Center at Avenel. A $1000 penalty was also imposed. For endangering the welfare of his child, the defendant was sentenced to a consecutive term of five years at Avenel with a two-and-one-half year parole disqualifier. He was also assessed a $500 penalty.

In support of this sentence, the court found that the aggravating factors substantially outweighed the mitigating factors. The court found no mitigating factors whatsoever. The following aggravating factors were noted: the defendant had a substantial prior record, including a previous sex offense with a child; the nature and circumstances of the case were "terrible;" the seriousness of the harm inflicted on the victim was "extraordinary;" there was a high risk that the defendant would commit another offense creating a particular need for deterrence; and a lesser sentence would depreciate the seriousness of the offense. However, no specific reasons were given, as required by *State v. Yarbough,* 100 *N.J.* 627 (1985), *cert.* denied, 475 U.S. 1014, 106 *S.Ct.* 1193, 89 *L.Ed.*2d 308 (1986), for imposing consecutive rather than concurrent sentences.

In an unreported opinion, the Appellate Division reversed. After raising the issue *sua sponte,* and requesting supplemen-

---

[1] The court rejected an argument made by the defense that a natural parent could be prosecuted only for violations of *N.J.S.A.* 2C:24–4, which is specifically aimed at abuses by one "having a legal duty for the care of a child," and not for violations of *N.J.S.A.* 2C:14–2, which prohibits sexual assault committed by anyone.

tal briefs, the court found that the convictions for aggravated sexual assault and endangering the welfare of a child should have merged. Accordingly, the five-year sentence for endangering the welfare of a child was vacated.

## II

Merger is based on the principle that "an accused [who] has committed only one offense * * * cannot be punished as if for two." *State v. Davis,* 68 *N.J.* 69, 77 (1975). Merger implicates a defendant's substantive constitutional rights. *State v. Truglia,* 97 *N.J.* 513, 522 (1984); *State v. Rodriguez,* 97 *N.J.* 263, 271 (1984); *State v. Davis, supra,* 68 *N.J.* at 77. The analysis is similar to a double jeopardy analysis. *State v. Mirault,* 92 *N.J.* 492, 501 (1983). Slightly different interests are involved, however. In double jeopardy cases the defendant seeks to avoid both multiple prosecution and multiple punishment; in merger cases, only multiple punishments are at issue.

The first step is to compare the statutes defining the offenses at issue. As this Court stated in *Davis,*

> [w]e start with the proposition that what is disallowed is double punishment for the same offense. Since it is the legislative branch that defines the unit of prosecution or "offense" and ordains its punishment, we must first determine whether the legislature has in fact undertaken to create separate offenses * * *. [68 *N.J.* at 77–78 (citations omitted).]

Thus the focus is on the elements of the crimes and the Legislature's intent in creating them.

However, this Court has rejected a mechanical application of the definitional analysis, requiring an additional, more flexible inquiry "focus[ing] on the episodic fragments of the events." *Truglia, supra,* 97 *N.J.* at 521; *accord Mirault, supra,* 92 *N.J.* at 501; *Davis, supra,* 68 *N.J.* at 81. This portion of the analysis is "attended by considerations of 'fairness and fulfillment of reasonable expectations in light of constitutional and common law goals.'" *Davis, supra,* 68 *N.J.* at 81 (quoting *State v. Currie,* 41 *N.J.* 531, 539 (1964)). Specifically,

[it] entail[s] analysis of the evidence in terms of, among other things, the time and place of each purported violation; whether the proof submitted as to one count of the indictment would be a necessary ingredient to a conviction under another count; whether one act was an integral part of a larger scheme or episode; the intent of the accused; and the consequences of the criminal standards transgressed. Certainly there are other factors to be considered and, along with the above, accorded greater or lesser weight depending on the circumstances of the particular case. [68 *N.J.* at 81.]

In *Davis,* the Court held that a conviction for unlawful possession of a controlled dangerous substance did not merge with a conviction for distribution. Although the Court acknowledged that the same conduct could sustain both convictions since "one must indeed possess the drug in order to sell it," *id.* at 82, it found no evidence that the possession in that case was a "mere fleeting and shadowy incident of the sale." *Id.* at 83; *see also State v. Valentine,* 69 *N.J.* 205, 211 (1976) (possession with intent to distribute and distribution of heroin convictions do not merge where defendant carried a stock of heroin around for a time before selling some of it to an undercover agent). *Accord State v. Jester,* 68 *N.J.* 87 (1975); *State v. Ruiz,* 68 *N.J.* 54 (1975).

Since *Davis,* we have dealt with merger issues by focusing on the specific facts of each case.[2] In *State v. Truglia, supra,* the Court concluded that convictions for aggravated assault and possession of a handgun with the purpose of using it unlawfully did not merge. 97 *N.J.* at 520. In that case, the defendant first chased the victim with a gun in his hand and later pointed it in the direction of the victim and fired. Although both criminal offenses arose out of the same course of conduct, the Court found that the convictions were supported by different segments of the sequence of events. *Id.* at 521. On the other hand, in *State v. Best,* 70 *N.J.* 56 (1976), the Court concluded that the conviction for "possession of a dangerous knife" did merge with armed robbery, since possession of a weapon was a

---

2*See* also N.J.S.A. *2C:1–8 (method of prosecution when conduct constitutes more than one offense), which "mirrors this judicial analysis."* State v. Mirault, supra, *92* N.J. *at 502 n. 10.*

necessary element of that offense, and "[t]here [was] no evidence * * * that defendant carried th[e] knife at a time before or after the robbery, or possessed it for any purpose other than perpetrating the robbery." *Id.* at 65–67; *see also State v. Allison*, 208 *N.J.Super.* 9, 24–25 (App.Div.1985) (aggravated arson and first degree arson convictions do not merge; although the same conduct constitutes the gravamen of both offenses, first degree arson involves the added element of offering or accepting payment to start a fire).

We discern from these cases that merger may be improper even where a single course of conduct constitutes a violation of two different criminal statutes. The factor critical to the merger decision in this case stems from the different interests protected by the statutes violated. Aggravated sexual assault, as defined in *N.J.S.A.* 2C:14–2a(1), is "an act of sexual penetration with another person" where "the victim is less than 13 years old." Endangering the welfare of a child is defined in *N.J.S.A.* 2C:24–4a. That statute provides:

> Any person having a legal duty for the care of a child or who has assumed responsibility for the care of a child who engages in sexual conduct which would impair or debauch the morals of the child, or who causes the child harm that would make the child an abused or neglected child * * * is guilty of a crime of the third degree. Any other person who engages in conduct or who causes harm as described in this subsection to a child under the age of 16 is guilty of a crime of the fourth degree.

The Appellate Division merged the defendant's convictions for these two offenses because it found that the convictions were based on precisely the same conduct, according no separate significance to the defendant's relationship to the victim.[3] In our view the offenses are different because the crime of endangering the welfare of a child is aimed not only at specific conduct but also at the violation of the duty that a

---

[3]The cases cited by the Appellate Division in support of its conclusion all involved defendants who were not related to their victims. *See State v. Whittle*, 52 *N.J.* 407 (1968); *State v. McCauley*, 157 *N.J.Super.* 349 (App.Div.), certif. denied, 77 *N.J.* 500 (1978); *State v. Gibson*, 150 *N.J.Super.* 351 (App.Div.), certif. denied, 75 *N.J.* 20 (1977).

parent owes to a child. It is evident that the Legislature intended to treat sexual acts committed by a father on his daughter differently from abuses committed by a stranger. The child endangerment statute, *N.J.S.A.* 2C:24–4a, provides that abuses by those with a legal duty to care for a child shall be third degree offenses while abuses by others are fourth degree offenses.[4] As we noted in *State v. Hodge*, 95 *N.J.* 369, 377 (1984), "[c]rime within the family is one of the most deeply troubling aspects of contemporary life. * * * The Legislature has therefore graded sexual crimes that occur within the family differently from those occurring in other contexts."

We have in the past observed that the status of the victim is a factor in deciding whether two offenses merge. In *State v. Mirault, supra,* 92 *N.J.* 492, where the defendant assaulted a police officer arresting him for theft, we held that the aggravated assault and first degree robbery convictions should merge because the proofs were identical and the violent act that was used to elevate the theft to first degree robbery also formed the basis of the aggravated assault conviction. *Id.* at 503–05. We also concluded that "under the particular facts of this case, the legislative scheme [did] not contemplate separate convictions." *Id.* at 504. However, we observed that if the conviction for aggravated assault had been based on *N.J.S.A.* 2C:12–1b(5), which prohibits an assault upon a police officer in the performance of his duties, rather than on the same acts that constituted the underlying robbery, the merger considerations would have been different. *Id.* at 505. We noted that there would have been an additional fact to prove—"the status of the victim as a police officer"—and observed that "the legislative concern for the status of the police may well evidence a specific intent to fractionalize the offense." *Id.* at 506. In the context

---

4It should also be noted that under *N.J.S.A.* 2C:14–2a(2) sexual assault upon a victim who is between the ages of thirteen and sixteen is elevated to aggravated sexual assault if the defendant is related to the victim, has supervisory power over the victim, or stands in *loco parentis* within the victim's household.

of this case, we think it is clear that the legislative concern for crimes within the family evidences an intent to distinguish sexual assaults on children committed by strangers from those committed by one with a legal duty to care for a child.

Application of the second *Davis* factor confirms this result. A conviction for endangerment requires, in addition to evidence of sexual acts, proof of a parental or custodial relationship. Moreover, although the time and place of the two offenses were essentially the same, the State offered evidence of various criminal acts committed during the course of the weekend. The record does not disclose what specific conduct formed the basis of the jury verdicts, but there was ample evidence to support both convictions based on different proofs. Thus, to the extent *Davis* emphasizes an analysis of the specific proofs offered as a guide to resolving merger issues, the proofs in this record suggest that merger is inappropriate. *Cf. State v. DeLuca,* 108 *N.J.* 98, 106 (1987) ("If the same evidence is actually employed to establish both offenses, the prosecution of the second offense is barred.").

In addition, the "consequences of the criminal standards transgressed" were not the same. In our view, merger of these two offenses would not adequately redress the profound injury to a five-year-old child caused by a father's perversion of the parent-child relationship. Here, the assault was initially detected when the child's mother noticed behavioral changes in her daughter when she returned from the weekend. The victim was forced to relive the assault and testify against her own father in open court. We do not denigrate the effect of a sexual assault on a child even when it is committed by someone she does not know. However, we think it is clear that the effect is not the same as when the abuse is committed by a parent whom the child depends on and trusts.

In sum, we hold that the defendant's convictions for aggravated sexual assault and endangering the welfare of a child do not merge. Although both convictions are based on the same

general conduct, the latter offense is also directed at the defendant's violation of his parental duty. We therefore reverse the judgment of the Appellate Division merging the two offenses.

### III

■ Resolution of the merger issue, however, does not necessarily resolve the issue of sentencing. In *Yarbough*, we cautioned that "though a defendant's conduct may have constituted multiple offenses, the sentencing phase concerns the disposition of a single, not a multiple, human being." 100 *N.J.* at 646 (quoting *State v. Cloutier*, 286 *Or.* 579, 591, 596 *P.*2d 1278, 1284 (1979)). Thus, in determining whether sentences for separate offenses should be served concurrently or consecutively, a sentencing court should focus on the fairness of the overall sentence.

The Code does not define the standards for deciding whether consecutive or concurrent sentences should be imposed when a defendant is convicted of multiple offenses in a single trial. *N.J.S.A.* 2C:44–5a provides only that "multiple sentences shall run concurrently or consecutively as the court determines at the time of sentence * * *." In *Yarbough* we held that the inquiry should be guided by the general purposes of the Code. 100 *N.J.* at 636; *see also N.J.S.A.* 2C:1–2c (providing general guidelines for the exercise of discretionary powers under the Code). As we stated in *Yarbough*,

[t]hose purposes center upon the concept that punishment of crime be based primarily on principles of deserved punishment in proportion to the offense and not rehabilitative potential, and that in dispensing that punishment, our judicial system should attain a predictable degree of uniformity. [100 *N.J.* at 636–37.]

In *Yarbough*, we also set forth specific criteria to guide sentencing courts in deciding whether to impose consecutive or concurrent sentences. Those criteria are:

(1) there can be no free crimes in a system for which the punishment shall fit the crime;

(2) the reasons for imposing either a consecutive or concurrent sentence should be separately stated in the sentencing decision;

(3) some reasons to be considered by the sentencing court should include facts relating to the crimes, including whether or not:

 (a) the crimes and their objectives were predominantly independent of each other;

 (b) the crimes involved separate acts of violence or threats of violence;

 (c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;

 (d) any of the crimes involved multiple victims;

 (e) the convictions for which the sentences are to be imposed are numerous;

(4) there should be no double counting of aggravating factors;

(5) successive terms for the same offense should not ordinarily be equal to the punishment for the first offense; and

(6) there should be an overall outer limit on the cumulation of consecutive sentences for multiple offenses not to exceed the sum of the longest terms (including an extended term, if eligible) that could be imposed for the two most serious offenses. [100 *N.J.* 643–44 (footnotes omitted).]

▆▆▆ Because we do not have a separate statement of reasons for the trial court's decision to impose consecutive sentences, we are compelled to remand this case for resentencing. A statement of reasons is a necessary prerequisite for adequate appellate review of sentencing decisions. On this record, we cannot determine whether the trial court's imposition of consecutive sentences was a valid exercise of discretion.

▆▆▆ On remand, the sentencing court should carefully weigh the foregoing factors. We emphasize, as we did in *Yarbough,* that the factors invoked by the Legislature to establish the degree of the crime should not be double counted when calculating the length of sentence. *Id.* at 645. Similarly, factors relied on to sentence a defendant to the maximum term for each offense should not be used again to justify imposing those sentences consecutively. Where the offenses are closely related, it would ordinarily be inappropriate to sentence a defendant to the maximum term for each offense and also require that those sentences be served consecutively, especially where the second offense did not pose an additional risk to the victim. The focus should be on the fairness of the overall sentence, and the sentencing court should set forth in detail its reasons for concluding that a particular sentence is warranted.

Accordingly, the Appellate Division judgment is reversed, and the case remanded for resentencing.

*For reversal and remandment*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For affirmance*—None.