712 A.2d 1133

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. JAMES
D. PENNINGTON, DEFENDANT–RESPONDENT.

Argued March 17, 1998—Decided July 14, 1998.

*Nicholas P. Ruggiero*, Assistant Prosecutor, argued the cause for appellant (*Robert W. Gluck*, Middlesex County Prosecutor, attorney).

*Robert L. Sloan*, Assistant Deputy Public Defender, argued the cause for respondent (*Ivelisse Torres*, Public Defender, attorney).

*Bennett A. Barlyn*, Deputy Attorney General, argued the cause for *amicus curiae*, Attorney General of New Jersey (*Peter Verniero*, Attorney General, attorney).

The opinion of the Court was delivered by

COLEMAN, J.

The important issues raised in this appeal are whether life imprisonment is the presumptive extended term requiring twenty-five years of parole ineligibility for a persistent offender convicted of first-degree kidnapping and whether a rejected plea offer may be considered by an appellate court when determining the excessiveness of sentences. The Appellate Division did not address the first issue and the panel was divided over the second. We hold that life imprisonment is the presumptive extended term for first-degree kidnapping for a persistent offender and that a twenty-five year bar to parole eligibility is discretionary. We also hold that a rejected plea offer is not relevant to whether a sentence imposed following a trial is excessive.

I

This appeal involves four criminal episodes that occurred in 1992 on November 22, December 8, and December 15, at the Marriott Residence Inn and the Ramada Inn, both of which are located on the Route 1 Princeton–South Brunswick corridor.

On November 22, 1992, James R. Linsell, the Residence Inn chief engineer responsible for maintaining the hotel's physical plant, spent the night in Room 1412. Between 5:00 and 5:30 a.m., defendant burglarized that room while armed with a knife that he used to threaten Linsell. Defendant gained entry into the room by knocking on the door and pretending to be one of the hotel's security staff. When Linsell opened the door, defendant forced his way inside.

Also on November 22, 1992, Derrick Kysar and Vincent Lyles occupied Room 541 at the Ramada Inn, approximately 1.7 miles from the Residence Inn. During the early morning hours of that day, defendant burglarized Room 541 and robbed Kysar and Lyles of their money and other property while threatening them with a knife. Defendant tied their hands with rope and taped their feet together to facilitate his escape.

The third episode occurred on December 8, 1992, while Barbara G. Dreher of Texas was staying in Room 1113 at the Residence Inn. Defendant allegedly burglarized her room while she was not present and stole jewelry and several credit cards. The fourth episode occurred seven days later, on December 15, 1992, when defendant pushed Aline Dossous, a housekeeping employee at the Residence Inn, into Room 421 and struggled with her. She managed to free herself and escape.

The episodes were tried under two indictments returned by two Grand Juries sitting in Middlesex County. Defendant was first indicted under Indictment # 224-01-93 which did not include charges of kidnapping, robbery, or criminal restraint. Approximately fourteen months later, however, Indictment # 432-3-94 was returned charging defendant separately for the offenses related to Lyles and Kysar, including kidnapping and robbery. The second indictment superseded six counts of the first indictment. The indictments were consolidated for trial.

Defendant was tried on six charges under Indictment # 224-01-93 that involved Linsell, Dreher and Dossous as victims:

Count One—second-degree burglary while armed with a weapon, against Linsell, contrary to *N.J.S.A.* 2C:18–2;

Count Two—fourth-degree unlawful possession of a weapon (knife), in conjunction with Count One, contrary to *N.J.S.A.* 2C:39–5d;

Count Three—second-degree possession of weapon (knife) for an unlawful purpose, in conjunction with Count One, contrary to *N.J.S.A.* 2C:39–4d;

[Counts Four through Nine that related to Lyles and Kysar were dismissed prior to trial and were superseded by the charges filed in Indictment # 432-3-94];

Count Ten—third-degree burglary against Dreher, contrary to *N.J.S.A.* 2C:18–2;

Count Eleven—third-degree theft by unlawful taking of Dreher's property, contrary to *N.J.S.A.* 2C:20–3; and

Count Twelve—second-degree burglary (Dossous) alleging bodily injury, contrary to *N.J.S.A.* 2C:18–2.

Under Indictment # 432-3-94, relating to Lyles and Kysar, defendant was tried on the following offenses:

Count One—second-degree burglary, contrary to *N.J.S.A.* 2C:18–2;

Counts Two and Three—first-degree armed robbery, contrary to *N.J.S.A.* 2C:15–1;

Counts Four and Five—first-degree kidnapping, contrary to *N.J.S.A.* 2C:13–1b;

Counts Six and Seven—third-degree criminal restraint, contrary to *N.J.S.A.* 2C:13–2b;

Count Eight—third-degree possession of a weapon (knife) for an unlawful purpose, contrary to *N.J.S.A.* 2C:39–4d;

Count Nine—fourth-degree unlawful possession of a weapon, contrary to *N.J.S.A.* 2C:39–5d.

Under Indictment # 224, the jury found defendant guilty of second-degree burglaries of Linsell, the first victim, and Dossous, the housekeeper, fourth-degree unlawful possession of a knife, second-degree possession of the knife for an unlawful purpose, and receiving stolen property, a disorderly persons offense. He was acquitted of burglarizing the room of the third victim, Dreher. After properly merging some of the offenses, defendant was sentenced on each of the two second-degree burglaries to consecutive ten year terms of imprisonment with five years of parole ineligibility. The court found two aggravating factors: the risk that defendant will commit another offense and the need for deterrence. The court also found that Dossous was frightened. There were no mitigating factors.

Under Indictment # 432, charging the more serious offenses against the two victims robbed at knife point and confined to their room (the kidnappings), the jury found defendant guilty on all charges. Prior to sentencing, the prosecutor filed a motion to have defendant sentenced to an extended term as a persistent offender. Although the prosecutor's motion did not specify the offense for which an extended term was sought, the motion papers and transcript of the motion proceedings reveal that the prosecutor sought to have defendant sentenced to an extended term for kidnapping pursuant to *N.J.S.A.* 2C:44–3a and *N.J.S.A.* 2C:43–7a. Defendant's status as a persistent offender was based on his age at the time the instant offenses were committed, two prior convictions for offenses on two separate occasions that were committed at different times when he was at least eighteen years old, and the fact that the present offenses occurred within ten years of his release on parole.

The prosecutor relied upon the following two prior convictions in support of the motion:

a) On July 10, 1978 defendant was sentenced on Count Two of Middlesex County Indictment 519–76, of Rape While Armed, *N.J.S.A.* 2A:138–1,:151–5; Somerset County Indictment 126–77J, Robbery, *N.J.S.A.* 2A:141–1; Somerset County Indictment 142–77J, Armed Robbery, *N.J.S.A.* 2A:141–1,:151–5; and Somerset County Indictment 143–77J, Armed Robbery, *N.J.S.A.* 2A:141–1,:151–5.

b) On June 1, 1987, defendant was sentenced on Counts One, Two and Three of Middlesex County Indictment 333-3-86, charging Burglary, *N.J.S.A.* 2C:18–2; Aggravated Assault, *N.J.S.A.* 2C:12–1b(2); and Possession of a Weapon for an Unlawful Purpose, *N.J.S.A.* 2C:39–4d.

During a sentencing hearing conducted on August 25, 1994, defense counsel conceded that defendant was statutorily eligible for a discretionary extended term as a repeat offender pursuant to *N.J.S.A.* 2C:44–3a because defendant had at least two prior convictions for two crimes committed at different times after his eighteenth birthday.

When granting the State's motion, the sentencing court concluded that it would impose an extended term on the kidnapping offenses primarily because of the need for deterrence for the public's protection. Although not explicit, it· is implicit from the sentencing transcript that the trial court was aware that extended term sentencing involves a multi-step process.

Counsel for defendant argued that the maximum extended term penalty for first-degree kidnapping was "life with parole ineligibility for twenty-five years. The presumptive sentence would be fifty years with parole ineligibility of twenty years. And the minimum sentence would be twenty years. [There is a] vast range left in the discretion of the court [in which] the sentence should fall." Counsel urged the court not to impose a life sentence because defendant did not physically harm the victims, and he was not armed with a firearm when committing the kidnappings. Counsel maintained that the kidnapping "was as close to the borderline as you can possibly get" and that the duration of the restraint lasted only minutes. The prosecutor, on the other hand, urged the court to sentence defendant for kidnapping "to imprisonment for the

maximum term that is authorized in this case which is thirty years to life."

On Indictment # 432, the court imposed three extended terms. For the second-degree burglary of Lyles and Kysar's room, the court imposed a term of twenty years and concurrent terms of life with twenty-five years of parole ineligibility on the first-degree kidnappings. The court explained that it imposed twenty-five years of parole ineligibility because it was the court's impression that the statute required those parole bars for an extended term of life. The court either merged or imposed concurrent terms on the other offenses. The aggregate sentence on the two indictments was life plus twenty years with thirty-five years of parole ineligibility.

In a reported opinion, a divided panel of the Appellate Division agreed with defendant's argument that his "extended term sentence of life imprisonment with a 25 year mandatory minimum plus two consecutive sentences totalling 20 years with a 10–year mandatory minimum was manifestly excessive." *State v. Pennington,* 301 *N.J.Super.* 213, 215, 693 *A.*2d 1222 (1997). Although all of the convictions were affirmed, all of the sentences were vacated and the case remanded for resentencing because of "errors in the sentence, an inadequate statement of reasons, and the excessive aggregate sentence." *Id.* at 216, 693 *A.*2d 1222. In concluding that the maximum sentences shocked the judicial conscience, the majority reasoned that the "kidnapping convictions were established by minimal facts necessary to establish the element of restraint," and that "[s]entencing defendant to the top of the twenty-years-to-life extended term range [was] unreasonably harsh," particularly where, as here, the "extended life term requires the sentence to include twenty-five years without parole." *Id.* 217–18, 693 *A.*2d 1222. The majority also relied on the "extreme disparity" between the eventual sentence and the State's final offer during plea negotiations to dispose of all the charges with a recommendation of a custodial term of fifteen years with a

seven-year parole disqualifier to support its conclusion that the sentences were excessive. *Ibid.*

The dissenting member of the panel found that the sentences adhered to the sentencing guidelines and did not shock the judicial conscience. *Id.* at 221–22, 693 *A.*2d 1222 (Humphreys, J., dissenting). He found that defendant's criminal record "warrants a most severe sentence." *Id.* at 223, 693 *A.*2d 1222. The dissent concluded that the magnitude of the crimes, the need to deter this defendant and others, and the need to protect society supported defendant's sentence. *Id.* at 226, 693 *A.*2d 1222. The dissenting member found the reasons stated on the record " 'terse' but sufficient." *Ibid.* Judge Humphreys concluded:

> This defendant is indisputably a dangerous criminal who is unremittingly dedicated to a life of violent crime. Judge Kuhlthau imposed a lawful sentence which will protect the public from this predator. In so doing, Judge Kuhlthau complied with Chief Justice Weintraub's belief that all judges hold office for the protection of a criminal's next victim.
>
> [*Ibid.*]

Defendant's petition for certification was denied. 151 *N.J.* 466, 700 *A.*2d 878 (1997). This is the State's appeal as of right based on the dissenting opinion. *R.* 2:2–1(a)(2).

II

The State argues that the majority below ignored or misapplied the guidelines for determining when a sentence shocks the judicial conscience. The State maintains that it was improper to compare a rejected plea offer to the ultimate sentence imposed for purposes of deciding whether the sentence was excessive. The State insists that the Code of Criminal Justice (Code) and judicial guidelines established for implementing the Code were not violated. Finally, the State contends that once the sentencing court fixed the base term for kidnapping at life, the Code required the imposition of a mandatory twenty-five-year parole disqualifier.

-A-

This Court has previously outlined the procedure to be followed before imposing a discretionary extended term.

First, the sentencing court must determine whether the minimum statutory predicates for subjecting the defendant to an extended term have been met. Second, the court must determine whether to impose an extended sentence. Third, it must weigh the aggravating and mitigating circumstances to determine the base term of the extended sentence. Finally, it must determine whether to impose a period of parole ineligibility.

[*State v. Dunbar*, 108 *N.J.* 80, 89, 527 *A.*2d 1346 (1987).]

It is undisputed that defendant satisfies the statutory predicates as a persistent offender, thus exposing him to an extended term. *N.J.S.A.* 2C:44–3a. The standard for determining whether to impose an extended term upon an eligible defendant is whether it is necessary for the protection of the public from future offenses by defendant through deterrence. *Dunbar, supra*, 108 *N.J.* at 90–91, 527 *A.*2d 1346. When a defendant is eligible for an extended term based on his status as a persistent offender, the need for deterrence is enhanced. *Id.* at 91, 527 *A.*2d 1346. "The primary motivation behind legislative creation of persistent offender status is to deal with the particular defendant in the context of the offense committed." *Ibid.*

Although defendant's prior criminal history satisfied the persistent offender status under *N.J.S.A.* 2C:44–3a, only two dates of convictions are involved. This alone, however, does not accurately reflect the seriousness of his past criminal involvements. Defendant was sentenced on the first of those two occasions on July 10, 1978 for (1) an armed rape that occurred on or about October 15, 1976; (2) an armed robbery that occurred on November 10, 1977; (3) a robbery that occurred on October 14, 1977; and (4) an armed robbery that occurred on November 23, 1977. On the second occasion, defendant was sentenced on June 1, 1987 for an aggravated burglary.

" 'Serious, harmful and calculated offenses typically call for deterrence.' " *Dunbar, supra*, 108 *N.J.* at 91, 527 *A.*2d 1346 (quoting *State in the Interest of C.A.H. and B.A.R.*, 89 *N.J.* 326,

337 n. 2, 446 *A.*2d 93 (1982)). Based on the sentencing court's consideration of defendant's extensive prior criminal record, which included many serious and violent offenses, the determination that there was a need for deterrence for the protection of society was clearly supported by the record. Defendant's past record of committing crimes of violence can be viewed as evidence of predisposition to commit similar offenses in the future unless confined to prison. Defendant acknowledged as much when he informed the court during his sentencing that "[r]ight now, I couldn't say that I could walk out of these doors and not commit another crime." Thus, the first two prongs of the *Dunbar* standard were met.

The third prong of the *Dunbar* test requires the sentencing court to determine the existence of the aggravating and mitigating factors and to weigh them in order to determine the base term. The court found three aggravating factors: the risk of re-offense, *N.J.S.A.* 2C:44–1a(3); defendant's extensive past criminal record that involves serious offenses, *N.J.S.A.* 2C:44–1a(6); and the need for deterrence, *N.J.S.A.* 44–1a(9). The court found no mitigating factors, thus eliminating the balancing requirements.

■ Although the sentencing court was required to consider the aggravating and mitigating factors when determining the base term and deciding whether to impose a term of parole ineligibility for kidnapping, *Dunbar, supra,* 108 *N.J.* at 91–92, 527 *A.*2d 1346, the controlling statutes significantly influence the ultimate sentence. For first-degree kidnapping, the ordinary term sentencing exposure is between fifteen years and thirty years. *N.J.S.A.* 2C:13–1c(1). A term of parole ineligibility, not to exceed one-half of the base term, may be imposed on the ordinary term. *N.J.S.A.* 2C:43–6b. The presumptive ordinary term for first-degree kidnapping is twenty years. *N.J.S.A.* 2C:44–1f(1)(a). The sentencing court rejected an ordinary term for kidnapping because of the need to protect the public from future offenses committed by defendant.

■ The prosecutor's motion for extended term sentencing provided the sentencing court the additional sentencing option of imposing an extended term. Pertinent to this appeal, the extended term statute, *N.J.S.A.* 2C:43–7a(1), provides that when a defendant has been convicted of first-degree kidnapping and is eligible for an extended term of imprisonment as a persistent offender pursuant to *N.J.S.A.* 2C:44–3, such a defendant may be sentenced to an extended term of imprisonment "for a specific term of years which shall be between 30 years and life imprisonment." *N.J.S.A.* 2C:43–7a(1). "[S]entences imposed pursuant to [*N.J.S.A.*] 2C:43–7a(1) shall have a presumptive term of life imprisonment ... [u]nless the preponderance of ... mitigating factors ... weighs in favor of a ... lower term within the limits authorized." *N.J.S.A.* 2C:44–1f. Because defendant was a persistent offender and there were no mitigating factors, the sentencing court imposed the presumptive extended term of life for first-degree kidnapping.

-B-

■ Next, we consider whether the maximum period of parole ineligibility for first-degree kidnapping is mandatory. When deciding whether to impose a discretionary as opposed to a mandatory term of parole ineligibility on an extended term sentence, a sentencing court is obligated to articulate the aggravating and mitigating factors pursuant to *N.J.S.A.* 2C:44–1a and b and then conduct a qualitative balancing of those factors. If the court is clearly convinced that the aggravating factors substantially outweigh the mitigating factors, a term of parole ineligibility may be imposed. *Dunbar, supra,* 108 *N.J.* at 92, 527 *A.*2d 1346. Once the decision to impose a discretionary term of parole ineligibility is made, the court must then set the parole bar. To do that, "it would clearly be necessary to take into account the defendant's entire prior record as part of the weighing process." *Id.* at 93, 527 *A.*2d 1346. Consequently, the aggravating and mitigating factors in an extended-term-sentencing case "determine[ ] both the

eligibility for an extended sentence and, in part, the length of the base and parole ineligibility features of the sentence." *Id.* at 94, 527 *A*.2d 1346. Because a sentencing court is required to consider parole consequences in sentencing, *N.J.S.A.*· 2C:44–1c(2), parole ineligibility may be imposed on a presumptive base term in extended term sentencing. *Dunbar, supra,* 108 *N.J.* at 95, 527 *A*.2d 1346.

 The maximum term of parole ineligibility for an extended term of life is set by *N.J.S.A.* 2C:43–7b. It provides:

> As part of a sentence for an extended term and notwithstanding the provisions of 2C:43–9, the court may fix a minimum term not to exceed one-half of the term set pursuant to subsection a. during which defendant shall not be eligible for parole or a term of 25 years during which time the defendant shall not be eligible for parole where the sentence imposed was life imprisonment; provided that no defendant shall be eligible for parole at a date earlier than otherwise provided by the law governing parole.

Based on the statutory language, the question becomes whether the term of twenty-five years is mandatory or discretionary. An examination of the legislative history is helpful.

The Code that was proposed in 1971 by the Criminal Law Revision Commission (Commission) did not provide for a specific term of parole ineligibility for discretionary life terms. 1 *Final Report of the New Jersey Criminal Law Commission* §§ 2C:43–7,:43–9, at 148–49 (1971) (hereinafter *Final Report* ). The Commission decided to leave parole ineligibility to the parole laws. *New Jersey Parole Bd. v. Byrne,* 93 *N.J.* 192, 204, 460 *A*.2d 103 (1983). Between the time the Commission's report was adopted in 1971 and enactment of the Code in 1978, the proposed § 2C:43–7b was substantially modified. As enacted in 1978, it provided:

> As part of a sentence for an extended term, the court may fix a minimum term during which the defendant shall not be eligible for parole and which may be *up to one-half* of the term set pursuant to subsection a. or a term of *up to* 25 years during which time the defendant shall not be eligible for parole where the sentence imposed was life imprisonment.
>
> [*L.* 1978, *c.* 95 (emphasis added).]

Subsection b was changed by the consensus amendments, *L.* 1979, *c.* 178, § 86, but it has not been changed since the Code

became effective on September 1, 1979. The 1979 consensus amendments changed subsection b parole ineligibility period for an ordinary term from "up to one-half of the term" to "not to exceed one-half of the term." It also changed the parole bar for an extended term of life from "a term of up to 25 years" to "a term of 25 years."

The Assembly Bill, A3279, was identical to S3203, the Senate's version of the 1979 consensus amendments. The Assembly Judiciary Committee's statement accompanying A3279 states that § 2C:43–7 was amended to make clear that court imposed parole ineligibility terms should not conflict with the terms of incarceration that would be served under the parole laws. Assembly Judiciary Committee, *Statement to Assembly Bill No. 3279,* at 13 (June 28, 1979).

When the Code became effective, the Parole Act of 1948, *N.J.S.A.* 30:4–123.14 to –123.44, repealed by *L.* 1979, *c.* 441, § 27, was still in effect. That Act was designed to accommodate the minimum-maximum sentencing scheme that predated the Code. The 1978 Code language in subsection 43–7b was consistent with the minimum-maximum sentencing scheme notwithstanding the fact that the Code authorized sentencing courts to impose parole ineligibility terms for the first time. Court imposed parole ineligibility, however, may never be less than that required by parole laws. *N.J.S.A.* 2C:43–6b; *N.J.S.A.* 2C:43–7b. There were pre-Code analogues to the Code's extended terms, for example, the now repealed Habitual Offender Law, *N.J.S.A.* 2A:85–8; the Sex Offender Act, *N.J.S.A.* 2A:164–3; and the sentence enhancement for armed offenders, *N.J.S.A.* 2A:151–5; parole release, however, was controlled by the Parole Act of 1948 rather than the sentencing court. The pre-Code experience was that maximum terms of life imprisonment were mostly discretionary rather than mandatory. 2 *Final Report* § 2C:43–4, at 318–19.

Simultaneously with consideration of the Code, the Legislature was considering new parole legislation. *New Jersey Parole Bd. v. Byrne, supra,* 93 *N.J.* at 213, 460 *A.*2d 103. The Legislature

passed the Parole Act of 1979 in December of that year, and the new Act became effective April 21, 1980. The Parole Act of 1979, *N.J.S.A.* 30:4–123.45 to –123.69, specifically addressed parole ineligibility for persons sentenced to life imprisonment. It provides:

> Each adult inmate sentenced to a term of life imprisonment shall become primarily eligible for parole after having served any judicial or statutory mandatory minimum term, or 25 years *where no mandatory minimum term has been imposed less* commutation time for good behavior and credits for diligent application to work and other institutional assignments.... Consistent with the provisions of the New Jersey Code of Criminal Justice (*N.J.S.* 2C:11–3, 2C:14–6, 2C:43–6, 2C:43–7), commutation and work credits shall not in any way reduce any judicial or statutory mandatory minimum term and such credits accrued shall only be awarded subsequent to the expiration of the term.
>
> [*N.J.S.A.* 30:4–123.51b (emphasis added).]

Regulations implementing the Parole Act of 1979 contain the following methodology for calculating parole eligibility terms for adult inmates:

> (c) The parole eligibility terms for adult inmates shall be determined by the following:
>
> 1. Where a life term, with no mandatory-minimum term, has been imposed, the parole eligibility term shall, except as provided in (c)3 below, be 25 years.
> 2. Where a specific term, with no mandatory-minimum term, has been imposed, the parole eligibility term, shall, except as provided in (c)3 below, be one-third of the specific term or 25 years, whichever is less.
> 3. Where a life term or a specific term with a judicial or statutory mandatory *minimum term has been imposed,* the parole eligibility term shall be the mandatory minimum term, provided that such minimum term is greater than otherwise required by subsection (c)1 or (c)2 above.
>
> [*N.J.A.C.* 10A:71–3.2]

Pursuant to *N.J.S.A.* 30:4–123.51b and the foregoing regulations, the New Jersey State Parole Board has promulgated a chart that contains the earliest and latest parole ineligibility release time when there is no judicially imposed parole ineligibility term. That chart reflects all credits allowed by the Parole Act. It reveals that for a life term, the earliest eligibility is eleven years, seven months and three days, and the latest eligibility is sixteen years, six months and eighteen days. When a sentencing court imposes a twenty-five year parole bar on a life sentence, however, the inmate's earliest eligibility is twenty-five years and no credits are allowed.

The Code obligates sentencing courts to "consider the defendant's eligibility for release under the law governing parole." *N.J.S.A.* 2C:44–1c(2). Based on the legislative history of parole ineligibility, we believe that *N.J.S.A.* 2C:43–7b should be parsed to provide a sentencing court three options for extended term sentencing. First, "the court may fix a minimum term not to exceed one-half of the term set ... during which the defendant shall not be eligible for parole." Second, "the court may fix .... a term of 25 years during which time the defendant shall not be eligible for parole where the sentence imposed was life imprisonment." Third, because the Legislature used the discretionary adjective "may" rather than mandatory language, and because the disjunctive "or" was used, the final sentencing option is for the court to decline to impose a parole bar, thereby permitting the Parole Act to control parole eligibility. Although the decision whether to impose a parole bar on a life sentence is discretionary, once the court decides to impose a parole bar on an extended term of life, that bar *must* be twenty-five years. The 1979 consensus amendments to *N.J.S.A.* 2C:43–7b changed the range of such a parole bar from "up to 25 years" to "a term of 25 years." In other words, the decision whether to impose a parole bar is discretionary, but there is no discretion in setting the bar.

We conclude, therefore, that the sentencing court was partially correct when it concluded that it had no discretion when it imposed twenty-five years of parole ineligibility. Rarely, however, will a sentencing court be justified in declining to impose a parole bar of twenty-five years after imposing an extended term of life. "[I]t would be anomalous that an extended sentence of fifty years results in ... more real time than" an extended term of life without a parole bar. *Dunbar, supra,* 108 *N.J.* at 95, 527 *A.*2d 1346. Nonetheless, we believe the sentencing court should reconsider the parole bar for kidnapping in view of our holding.

-C-

The State properly concedes that the sentencing court incorrectly imposed three extended-term sentences, one for sec-

ond-degree burglary of Lyles and Kysar's room and two for kidnapping them. *N.J.S.A.* 2C:44–5a(2) directs that when multiple sentences are imposed for more than one offense, "[n]ot more than one sentence for an extended term shall be imposed." Unlike the term for murder, life imprisonment is not an ordinary term for kidnapping. Thus, the extended term sentences imposed on one of the kidnappings and for the burglary were properly vacated by the Appellate Division.

On remand, the sentencing court is directed to reconsider and explain its reasons for imposing consecutive maximum sentences for the two burglaries under Indictment # 224 in light of the extended term for one of the kidnappings. Although the Code does not proscribe those consecutive sentences, justification for them must be consistent with the general policies of the Code and judicial sentencing guidelines. *State v. Ghertler,* 114 *N.J.* 383, 391, 555 *A.*2d 553 (1989); *State v. Yarbough,* 100 *N.J.* 627, 643–44, 498 *A.*2d 1239 (1985).

The purpose advanced by the extended term for kidnapping based on a defendant's status as a persistent offender is the protection of society from defendant, the criminal. The goal of the Code to be served when sentencing a defendant on other offenses is to make the punishment fit the crime. The sentencing court did not fully explain why the consecutive maximum sentences imposed for those two offenses fit those crimes. We still adhere to the view that "[t]he focus should be on the fairness of the overall sentence, and the sentencing court should set forth in detail its reasons for concluding that a particular sentence is warranted." *State v. Miller,* 108 *N.J.* 112, 122, 527 *A.*2d 1362 (1987). Once the sentencing court used the aggravating factors to impose the maximum base sentences with maximum parole disqualifiers for the two burglaries, *Miller* required the court to articulate other reasons for imposing the sentences consecutively. *Ibid.* Although the Legislature has by *L.* 1993, *c.* 223 superseded *Yarbough* to the extent that it recommended an overall outer limit on the cumulation of consecutive sentences for multiple offenses,

*State v. Eisenman,* 153 *N.J.* 462, 478–479, 710 *A.*2d 441 (1998), it has not superseded the requirement for principled sentencing. The court on remand is required to explain why a shorter second term for the same offense is not warranted if consecutive terms are reimposed.

## III

 Finally, we consider whether the Appellate Division erred when it determined that the rejected plea offer was relevant to the issue of alleged excessiveness of sentence. We conclude that both the Code and our decisional law establish a public policy that prohibits such use of rejected plea offers.

 Plea negotiation is an acceptable, legitimate, and fair administration of criminal justice. *Bordenkircher v. Hayes,* 434 *U.S.* 357, 361–62, 98 *S.Ct.* 663, 667, 54 *L. Ed.*2d 604, 609 (1978); *State v. Hessen,* 145 *N.J.* 441, 450, 678 *A.*2d 1082 (1996); *State v. Barboza,* 115 *N.J.* 415, 420, 558 *A.*2d 1303 (1989); *State v. Taylor,* 80 *N.J.* 353, 360–61, 403 *A.*2d 889 (1979); *State v. Marzolf,* 79 *N.J.* 167, 182, 398 *A.*2d 849 (1979). It accommodates the interest of society by helping the criminal justice system keep pace with the ever-burgeoning caseload. It also benefits defendants by reducing penal exposure. *Barboza, supra,* 115 *N.J.* at 420, 558 *A.*2d 1303; *Taylor, supra,* 80 *N.J.* at 361, 403 *A.*2d 889. A plea agreement is, however, governed by contract-law concepts. *State v. Barone,* 288 *N.J.Super.* 102, 118, 671 *A.*2d 1096 (App.Div.1996), *rev'd on other grounds,* 147 *N.J.* 599, 689 *A.*2d 132 (1997) (citing *United States v. Moscahlaidis,* 868 *F.*2d 1357, 1361 (3d Cir.1989)). If the plea bargain falls apart or is rejected, it has no value; it is as if the offer never existed. A plea offer is an "all-or-nothing arrangement," *Barboza, supra,* 115 *N.J.* at 422, 558 *A.*2d 1303, and if the offer is rejected by either party, or the agreement is later rejected by the sentencing court pursuant to *Rule* 3:9–3(c), the court must "return the parties to the position they were in at the beginning of the ... plea hearing." *Id.* at 427, 558 *A.*2d 1303; *State v. Kovack,* 91 *N.J.* 476, 485, 453 *A.*2d 521 (1982); *State v. Naji,* 205 *N.J.Su-*

*per.* 208, 216, 500 *A.*2d 723 (App.Div.1985), *certif. denied,* 103 *N.J.* 467, 511 *A.*2d 649 (1986). Thus, when defendant rejected the State's offer, the plea negotiations were void for all purposes and could be afforded no substantive weight by either the trial or appellate court.

The Code's position, consistent with contract principles, is that a rejected plea should have no impact on sentencing following a trial. The Code states that "[a] plea of guilty by a defendant or failure to so plead shall not be considered in withholding or imposing a sentence of imprisonment." *N.J.S.A.* 2C:44–1c(1). Under the Code, as under a contract analysis, there can be neither punishment nor benefit derived from a rejected negotiated disposition.

Viewed in that context, the pre-trial plea proposal offered to, and rejected by, defendant does not impugn the post-trial sentences. Rejected plea offers may not be considered as a factor in determining whether a sentence is excessive. To permit such an attack would unfairly undermine plea negotiations, an essential tool to the administration of criminal justice. "It would [ ] seriously inhibit the discretion of the prosecutor [to engage in plea negotiations] and, after the [rejection of a proposed plea agreement by a defendant or a sentencing court], would serve to discourage efforts by the State to enter into a negotiated plea agreement." *State v. Wallace,* 146 *N.J.* 576, 589, 684 *A.*2d 1355 (1996). Similarly, if a negotiated plea offer that is rejected can be used against a defendant, that would discourage defendants from negotiating. We hold, therefore, that the Appellate Division erred when it found the plea offer relevant to the issue whether the sentences were manifestly excessive. After defendant rejected the plea offer and was convicted in a trial of three first-degree offenses that were not part of the plea negotiations, the prosecutor was free to seek the maximum sentences in accordance with our sentencing guidelines. *State v. Varona,* 242 *N.J.Super.* 474, 493, 577 *A.*2d 524 (App.Div.), *certif. denied,* 122 *N.J.* 386, 585 *A.*2d 389 (1990).

## IV

We affirm all of defendant's convictions and the sentence of life on one count of kidnapping. We reverse the Appellate Division's holding that the pre-trial plea offer may be considered when determining whether one or more sentences are excessive. We remand the case to the Law Division for reconsideration of the parole bar on the kidnapping sentence, clarification of the consecutive sentences imposed for the two second-degree burglaries, and resentencing on one count of kidnapping and the burglary of Lyles and Kysar's room in accordance with this opinion.

STEIN, J., concurring in part and dissenting in part.

The State's appeal as of right, based on the dissent below, contests the Appellate Division's holding that the aggregate sentence imposed on defendant was excessive. 301 *N.J.Super.* 213, 221, 693 *A.*2d 1222 (1997). On indictment 224–01–93(224), defendant was convicted of two counts of second-degree burglary and sentenced to two consecutive ten-year prison terms, each with a five-year period of parole ineligibility. On indictment 432–03–94(432), defendant was convicted of two counts of first-degree kidnapping and received two extended-term life sentences on those offenses, each with a twenty-five year period of parole ineligibility. He was also convicted of two counts of first-degree armed robbery on which he was sentenced to two twenty-year terms. Defendant was also convicted of second-degree burglary for which he was sentenced to an extended term of twenty years. The aggregate sentence was life plus twenty years, with a thirty-five year parole disqualifier.

The Court's opinion is troubling in several respects. First, it does not address directly the only issue before us on appeal—the excessiveness of the aggregate sentence. Instead, it focuses on two collateral issues not raised by the dissent below: the presumptive extended-term sentence for first-degree kidnapping and whether twenty-five years is a mandatory or discretionary parole-ineligibility term on that sentence; and, second, whether an

appellate court reviewing an excess sentencing issue is prohibited from considering as a factor in its decision the disparity between a plea offer rejected by defendant and the ultimate sentence.

Second, the Court's fragmented disposition of the sentencing issues posed by the appeal unnecessarily restricts the trial court's discretion on remand. Both parties agree that the three extended-term sentences imposed by the trial court are illegal. Instead of vacating all three extended terms to permit the trial court to reconsider its aggregate sentence, the Court preserves one extended term on one kidnapping conviction and vacates the extended term on the other kidnapping conviction and on the burglary offense, requiring resentencing on both. The Court also requires the trial court to reconsider imposition of a parole-ineligibility term on the preserved extended sentence for first-degree kidnapping. In addition, the Court requires the trial court to reconsider its imposition of consecutive sentences on the second-degree burglary convictions pursuant to indictment 224. Thus, without addressing the excessive sentence issue, the Court preserves defendant's life sentence, the base extended term on one first-degree kidnapping charge—and the sentence most sharply criticized by the Appellate Division's majority—and remands the remaining sentencing issues for reconsideration.

The Court's piecemeal disposition of the sentencing issues will undermine the reliability of the resentencing proceeding and will restrict the trial court's ability to reconsider comprehensively all sentencing options. The more appropriate disposition would be to remand this case to the trial court for resentencing on all convictions. In the process, the trial court will be informed that its sentencing options include the imposition of an extended-term sentence on only one of defendant's convictions, but should also be informed that such an extended-term sentence could be imposed on one of the convictions other than first-degree kidnapping.

Moreover, the Court has overreacted to the Appellate Division's reference to the prosecutor's rejected plea offer and has unnecessarily and improperly imposed a blanket restriction against any

consideration of plea offers by appellate courts in reviewing excessive-sentence challenges. The Court's prohibition unwisely and unduly restricts the sentencing review function of the Appellate Division.

I

The Court's opinion details the material facts. Defendant stands convicted of charges arising from three separate criminal episodes, two on November 22, 1992, and one on December 15, 1992. On November 22, 1992, defendant burglarized a hotel room in the Residence Inn on Route 1 during the early morning hours while armed with a knife that he used to threaten the occupant, James Linsell. Later that morning defendant burglarized room 541 at the Ramada Inn, robbed the victims, Kysar and Lyles, of money and property while threatening them with a scissor and a knife. To prevent interference with his escape, defendant tied the victims' hands with rope and taped their feet. Within five minutes Kysar and Lyles freed themselves. The third incident occurred on December 15, 1992, when defendant broke into room 421 at the Residence Inn and in the process struggled with Aline Dossous, a housekeeping employee.

Based on the incidents involving Linsell and Dossous, defendant was convicted of two counts of second-degree burglary and sentenced to two consecutive ten-year terms, each with five years of parole ineligibility. The incident involving Kysar and Lyles resulted in convictions on two counts of first-degree armed robbery, one count of second-degree burglary, and two counts of first-degree kidnapping.

The trial court purported to impose five concurrent extended-term sentences on defendant's convictions for robbery, burglary, and kidnapping. However, the sentences on the two counts of first-degree armed robbery were twenty years each, within the normal range for first-degree crimes. The trial court did impose an extended-term sentence of twenty years on the second-degree burglary conviction, and concurrent extended-term sentences of

life with twenty-five years of parole ineligibility on the two first-degree kidnapping convictions. That the multiple extended-term sentences are illegal is uncontested. *See N.J.S.A.* 2C:44–5a(2). The critical issue is whether the sentencing proceeding before the trial court was sufficiently reliable to enable this Court to resolve the excessive sentencing issue posed by this appeal. The Court elects not to confront that issue, but decides it passively by preserving only the base term of one extended-term sentence for kidnapping, remanding for reconsideration the parole ineligibility portion of that sentence, as well as the other extended-term sentences and the consecutive feature of the second-degree burglary sentences.

No one can dispute the seriousness of defendant's crimes. On three separate occasions he broke into hotel rooms, twice armed with a knife, and once committing armed robberies of two victims whom he then unlawfully restrained. Nor is it disputable that defendant is statutorily eligible for extended-term sentencing. *See N.J.S.A.* 2C:44–3a. As the Court's opinion details, defendant was sentenced to prison in July 1978, after being convicted on two counts of armed robbery, one count of robbery, and one count of rape while armed. In June 1987, defendant was sentenced to prison on the basis of convictions of burglary, aggravated assault and possession of a weapon for an unlawful purpose. *Ante* at 351, 712 *A.*2d at 1136. The nature and number of defendant's convictions for assaultive offenses underscores both defendant's dangerousness as well as his eligibility for extended-term sentencing.

In *State v. Dunbar,* 108 *N.J.* 80, 527 *A.*2d 1346 (1987), this Court explained that in addition to the statutory prerequisites for extended-term sentencing the Code of Criminal Justice contemplates a finding by the sentencing court, before the court imposes an extended term, that the defendant's commitment for an extended term is necessary for the protection of the public:

> As originally proposed, the Code of Criminal Justice required that the court "incorporat[e] in the record" a finding that "the defendant is a persistent offender whose commitment for an extended term is necessary for the protection of the

public." [*The New Jersey Penal Code, Final Report of New Jersey Criminal Law Revision Commission,* Vol. I at 154 (1971).] In the process of legislative revisions that added the dangerous and mentally abnormal category (later deleted) and expanded the persistent offender and professional criminal categories, the reference to "protection of the public" was not carried forward. But we find no evidence of intent to adopt any other standard. Such a standard is consistent with the general mandate in New Jersey that the provisions of the Code be interpreted to further the general purposes of sentencing as defined in *N.J.S.A.* 2C:1–2b, including the insurance of "the public safety by preventing the commission of offenses through the deterrent influence of sentences imposed and the confinement of offenders when required in the interest of public protection." *N.J.S.A.* 2C:1–2b(3).

[*Id.* at 90–91, 527 *A.*2d 1346.]

That standard, "protection of the public," necessarily implicates a determination that the available standard sentencing options do not adequately protect the public, and that adequate protection of the public can be achieved only by imposition of an extended term. *Id.* at 91, 527 *A.*2d 1346. Ordinarily, the sentencing court's inquiry concerning the need for an extended term can be satisfied by comparing the standard sentencing range for a defendant's offense with the extended-term sentencing range for that offense.

In this case, however, the inquiry is complicated by the defendant's convictions of multiple offenses carrying different standard and extended terms. At the sentencing hearing, the trial court expressed its intention to impose standard-term sentences on the second-degree burglary convictions under indictment 224, imposing two consecutive ten-year sentences with five years of parole ineligibility on each. The sentencing court also determined to impose concurrent sentences on the convictions involving the burglary, armed robbery, and kidnapping of Kysar and Lyles, but to order those sentences to be consecutive to the sentences on indictment 224. In that context, and assuming imposition of a standard presumptive sentence of twenty years with ten years of parole ineligibility on the kidnapping charges, consecutive to the indictment 224 sentences, defendant would have been subject to an aggregate standard-term sentence of forty years with twenty years of parole ineligibility.

The sentencing transcript does not indicate that the trial court considered and rejected that sentencing option as insufficient for the protection of the public. Assuming the court did so by implication, the next question is how long an extended-term sentence is necessary to protect the public. In turn, that raises the question of which of the three offenses under indictment 432 should be the subject of the extended term.

Although the issue is not addressed in *Dunbar, supra,* the rationale underlying the purpose of extended-term sentencing dictates that a sentencing court confronted with a defendant convicted of multiple offenses has the discretion to select the specific conviction on which to impose an extended term. Relevant to the exercise of the court's discretion is the court's determination of what sentence in the aggregate adequately would serve to protect the public. Also germane is the "Code's central premise that the punishment should fit the crime and not the criminal. . . . The primary motivation behind legislative creation of persistent offender status is to deal with the particular defendant in the context of the offense committed." *Dunbar, supra,* 108 *N.J.* at 91, 527 *A.*2d 1346.

As the Court's opinion indicates, *ante* at 355, 360, 712 A.2d at 1138, 1141, the presumptive base extended term for first-degree kidnapping is life imprisonment, and although a parole-ineligibility term is discretionary, if one is imposed it must be for twenty-five years. The presumptive base extended term for first-degree robbery is fifty years, and the presumptive base extended term for second-degree burglary is fifteen years. *See N.J.S.A.* 2C:44–1f. Pursuant to the Code, the sentencing court may fix a minimum parole-ineligibility term as part of an extended-term sentence not to exceed one-half the base term (or not to exceed twenty-five years if the base term is life). *See N.J.S.A.* 2C:43–7b. The sentencing transcript does not indicate that the sentencing court was aware that it could impose an extended term on a conviction other than kidnapping. Pursuant to the Court's disposition, that option will also be unavailable to the sentencing court on remand.

But the inference is inescapable, based on the transcript of the sentencing proceeding, that the trial court failed to focus on the extent to which extended-term sentencing was necessary for the protection of the public, and was unaware of its options and the scope of its discretion in imposing an extended term. Because the reasons underlying the trial court's sentencing disposition are inadequately stated in the record, the reliability of the sentence is questionable and the sentence should not be sustained. See *State v. Roth*, 95 *N.J.* 334, 365, 471 *A.*2d 370 (1984)(noting that "appellate review of a sentencing decision calls for us to determine, first, whether the correct sentencing guidelines . . . have been followed"); *State v. Dunbar, supra*, 108 *N.J.* at 94, 97, 527 *A.*2d 1346 (noting that "[i]t is not necessary that every sentence be a discourse," but observing that "the hallmark of a principled sentence will be found in the reasons stated by the court for the imposition of the sentence").

The Code's focus on the "offense committed" for purposes of extended-term sentencing, *id.* at 91, 527 *A.*2d 1346, also calls into question the appropriateness of the trial court's imposition of an extended term on either of defendant's kidnapping convictions. Originally, defendant was indicted on two counts of third-degree criminal restraint in respect of his actions in tying and taping Lyles and Kysar to facilitate his escape. A few weeks prior to trial, after defendant rejected the State's plea offer, that indictment was superseded by one charging defendant with two counts of first-degree kidnapping. (The original indictment also charged defendant with two counts of third-degree theft by unlawful taking whereas the superseding indictment charged two counts of first-degree armed robbery). Although the trial court denied defendant's motion at the close of the State's case for a judgment of acquittal on the kidnapping counts, the record reveals that the State's proofs on the kidnapping counts were marginal at best. Under the Code, a person is guilty of kidnapping if "he unlawfully confines another for a substantial period . . . [t]o facilitate commission of any crime or flight thereafter." *N.J.S.A.* 2C:13–1b. As we

noted in *State v. La France,* 117 *N.J.* 583, 594, 569 *A.*2d 1308 (1990),

one is confined for a substantial period if that confinement "is criminally significant in the sense of being more than merely incidental to the underlying crime," and that determination is made with reference not only to the duration of the confinement, but also to the "enhanced risk of harm resulting from the [confinement] and isolation of the victim [or others]. That enhanced risk must not be trivial."

[Quoting *State v. Masino,* 94 *N.J.* 436, 447, 466 *A.*2d 955 (1983).]

The record reveals that Lyles and Kysar freed themselves after about five minutes, and arguably raises a significant question whether the enhanced risk of harm was "trivial," or whether their confinement was "merely incidental to the underlying crime." That issue is not before us. But the marginal quality of the State's proofs on first-degree kidnapping surely is an appropriate factor for the trial court to consider when it selects from among defendant's convictions that conviction on which an extended term will be imposed. Here, the trial court made no choice at all because it incorrectly assumed that it could lawfully impose multiple extended terms. In the face of the trial court's obviously flawed approach to extended-term sentencing, the Court's determination to preserve one extended base term for first-degree kidnapping is perplexing, particularly where so much of the sentence is being remanded for reconsideration, and undoubtedly to a different trial court judge because the sentencing judge has retired.

## II

The Court also holds, although the issue is not raised by the dissent below, that "the Appellate Division erred when it found the plea offer relevant to the issue whether the sentences were manifestly excessive." *Ante* at 363, 712 *A.*2d at 1143. I question both the correctness of and the necessity for that holding.

Although the Court strives mightily to establish that a rejected plea offer is a nullity for all purposes, *ante* at 362, 712 *A.*2d at 1142, it obviously overstates the law. A basic protection of the due process clause of the Fourteenth Amendment is that a crimi-

nal defendant who rejects a prosecutor's plea offer cannot be penalized by a harsh sentence solely for electing to stand trial. *See United States v. Araujo,* 539 *F.*2d 287, 291–92 (2d Cir.), *cert. denied,* 429 *U.S.* 983, 97 *S.Ct.* 498, 50 *L. Ed.*2d 593 (1976); *United States v. Duffy,* 479 *F.*2d 1038, 1039 (2d Cir.)(*per curiam* ), *cert. denied,* 414 *U.S.* 978, 94 *S.Ct.* 299, 38 *L. Ed.*2d 221 (1973); *United States v. Stockwell,* 472 *F.*2d 1186, 1187 (9th Cir.), *cert. denied,* 411 *U.S.* 948, 93 *S.Ct.* 1924, 36 *L. Ed.*2d 409 (1973); *United States v. Wiley,* 278 *F.*2d 500, 504 (7th Cir.1960); *Battles v. State,* 482 *So.*2d 540, 541 (Fla.Dist.Ct.App.1986); *People v. Dennis,* 28 *Ill.App.*3d 74, 328 *N.E.*2d 135, 138 (1975); *State v. Baldwin,* 192 *Mont.* 521, 629 *P.*2d 222, 225–26 (1981). Similarly, the American Bar Association Standards provide:

> The court should not impose upon a defendant any sentence in excess of that which would be justified by any of the protective, deterrent, or other purposes of the criminal law because the defendant has chosen to require the prosecution to prove guilt at trial rather than to enter a plea of guilty or nolo contendere.
> [3 *ABA Standards for Criminal Justice,* Standard 14–1.8(b) (2d ed.1980).]

Accordingly, on several occasions our courts have taken into account rejected plea offers in considering whether a defendant's ultimate sentence after trial was the product of impermissible vindictiveness. See *State v. Powell,* 294 *N.J.Super.* 557, 568, 683 *A.*2d 1175 (App.Div.1996); *State v. DeLuzio,* 274 *N.J.Super.* 101, 123, 643 *A.*2d 609 (App.Div.1993), *aff'd in part,* 136 *N.J.* 363, 643 *A.*2d 535 (1994); *State v. Varona,* 242 *N.J.Super.* 474, 492–93, 577 *A.*2d 524 (App.Div.), *certif. denied,* 122 *N.J.* 386, 585 *A.*2d 389 (1990). For purposes of the constitutional inquiry, those plea offers are hardly a nullity and must be taken into account by the reviewing court. By the same token, a court confronted with the challenge that a sentence is excessive rather than vindictive ought not be precluded from considering the rejected plea offer for whatever relevance it may have. Arguably, the plea offer's relevance in this case was rather insignificant because it was rejected before defendant was indicted for first-degree kidnapping. On the other hand, if the State had renewed its offer of a fifteen-year base term with seven years of parole ineligibility after the superseding indictment charging kidnapping and armed robbery was

returned, its relevance to the excessive-sentencing issue would be greater. For the Court, however, to hold that rejected plea offers are irrelevant *as a matter of law* to excessive-sentencing issues is simply counter-intuitive. Our Appellate Division judges need not be prohibited from considering in an excessive-sentence context a factor that may be of obvious, although limited, relevance—the prosecutor's pre-trial assessment of the appropriate sentence. That in this case the Appellate Division may have attached inordinate weight to the rejected plea offer is scant justification for the rigid rule of law imposed by the Court.

### III

I agree with the Court's determination that the trial court's sentence is illegal and not adequately explained. Unlike the Court, I would remand the entire sentence to the trial court for resentencing without deciding the excessive-sentencing issue presented by this appeal.

*For affirmance in part; reversal in part and remandment—* Chief Justice PORITZ and Justices POLLOCK, O'HERN, GARIBALDI, and COLEMAN—5.

*Concur in part; dissent in part—*Justice STEIN—1.