**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1511-15T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JAMAR B. COCKREN,

    Defendant-Appellant.

_____

Submitted January 16, 2018 — Decided June 12, 2018

Before Judges Ostrer and Whipple.

On appeal from Superior Court of New Jersey,
Law Division, Middlesex County, Indictment No.
15-01-0049.

Joseph E. Krakora, Public Defender, attorney
for appellant (Molly O'Donnell Meng, Assistant
Deputy Public Defender, of counsel and on the
briefs).

Gurbir S. Grewal, Attorney General, attorney
for respondent (Evgeniya Sitnikova, Deputy
Attorney General, of counsel and on the
brief).

PER CURIAM

Defendant Jamar Cockren appeals from his September 11, 2015 judgment of conviction for second-degree eluding, fourth-degree resisting arrest, and numerous motor vehicle violations. For the reasons that follow, we affirm in part and reverse in part.

I.

On the evening of July 30, 2014, defendant and his friend, Raul Colon, were drinking alcohol at another friend's house in Carteret. More than once that night, Colon gave defendant the keys to his vehicle, a Honda CRV, so defendant could "go get something." While returning to the vehicle for a third time, defendant told Colon "he was going to be right back." Defendant drove to a friend's house, and after she got in the passenger seat, they drove around aimlessly while talking.

At approximately four a.m. on July 31, 2014, a Woodbridge Township Police Sergeant was on patrol in his marked police SUV. He came to a stop at a red light and noticed defendant's vehicle across the intersection, straddling the solid white line that separates the straight lane from the left hand turn lane. After the light turned green, the officer drove through the intersection and observed that defendant remained stopped and was using his cell phone. The officer then ran the vehicle's license plate, which the computer flagged because the vehicle's owner had a

suspended driver's license. The officer turned around to follow defendant but lost sight of him.

Soon thereafter, the officer located defendant and observed him make an improper turn onto Route 35. The officer activated his overhead lights, and defendant eventually pulled over. However, as the officer approached the driver side of the vehicle, defendant sped away. The officer broadcasted the pursuit over the police radio and followed. He trailed defendant as defendant sped through a residential area, proceeded through two stop signs, generally drove recklessly, and suddenly slowed his vehicle to a roll next to a church. Defendant then, while the car was still in motion, exited the driver door and fled. Around this time, other officers arrived and began to establish a perimeter.

Two Woodbridge officers heard the broadcast and joined the pursuit. They watched as defendant's vehicle slowed down next to the church, and defendant exited the still moving vehicle. Noticing the passenger screaming hysterically in the passenger seat of the vehicle, the officer jumped in the driver's seat and put the vehicle in park.

While this was happening, another officer chased defendant on foot. Throughout the pursuit, the officer ordered defendant to stop, but defendant ignored the commands. Eventually, defendant

approached a high fence, abandoned his attempt to flee, and laid on the ground, placing his hands behind his back.

In November 2014, a Middlesex County Grand Jury indicted defendant on the following charges: second-degree eluding an officer, N.J.S.A. 2C:29-2(b); third-degree unlawful taking of means of conveyance, N.J.S.A. 2C:20-10; and fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2).

On July 9, 2015, the trial judge heard oral argument on the defendant's motion in limine to exclude evidence of his suspended driving license at the time of the incident. After conducting a State v. Cofield, 127 N.J. 328 (1992), analysis, the judge allowed evidence of defendant's suspended license and gave a limiting instruction to the jury. At trial, defendant argued that the conditions present during the early hour chase did not create a risk of injury or death — an element necessary for a second-degree eluding conviction. Instead, defendant sought a conviction for a lesser charge of third-degree eluding.

Ultimately, a jury found defendant guilty of second-degree eluding an officer, N.J.S.A. 2C:29-2(b), and fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2), but acquitted him of third-degree unlawful taking of means of conveyance, N.J.S.A. 2C:20-10.

On September 11, 2015, defendant was sentenced to nine years imprisonment with a four year period of parole ineligibility for the second-degree eluding an officer charge and concurrently to eighteen months for the fourth-degree resisting arrest charge. After a subsequent bench trial, defendant was found guilty of nine motor vehicle violations, including reckless driving, N.J.S.A. 39:4-96; two counts for disregarding a traffic control device, N.J.S.A. 39:4-81; and two counts for improper turns, N.J.S.A. 39:4-123. The judge imposed monetary fines and jail time to run consecutive to his other sentences for these motor vehicle violations. This appeal followed.

On appeal, Defendant raises the following issues:

POINT I:

THE TRIAL COURT IMPROPERLY ALLOWED THE STATE TO INTRODUCE EVIDENCE OF COCKREN'S LICENSE SUSPENSION FOR NO LEGITIMATE PURPOSE.

POINT II:

THE TRIAL COURT ERRED IN FAILING TO MERGE FIVE OF THE MOTOR VEHICLE CONVICTIONS INTO THE ELUDING CONVICTION.

POINT III:

THE TRIAL JUDGE IMPROPERLY CONVICTED COCKREN OF LEAVING THE SCENE OF AN ACCIDENT.[1]

---

[1] Defendant withdrew this argument on appeal, and therefore, it does not warrant discussion.

POINT IV:

THE TRIAL JUDGE ERRED IN IMPOSING A NEAR-MAXIMUM BASE TERM WITH A NEAR-MAXIMUM PAROLE DISQUALIFIER.

## II.

Defendant argues the trial judge improperly allowed evidence of his suspended driver's license because it had no legitimate purpose and constituted impermissible other bad acts evidence. He contends motive was not in dispute because he essentially conceded he eluded the police, and the only issue left for the jury was the degree of the eluding conviction.

"[T]he decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion." State v. Scott, 229 N.J. 469, 479 (2017) (quoting Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010)). A trial court's evidentiary ruling will be upheld "absent a showing of an abuse of discretion, i.e., there has been a clear error of judgment." State v. Brown, 170 N.J. 138, 147 (2001) (quoting State v. Marrero, 148 N.J. 469, 484 (1997)). "The trial court, because of its intimate knowledge of the case, is in the best position to engage in this balancing process." Marrero, 148 N.J. at 483 (quoting State v. Ramseur, 106 N.J. 123, 266 (1987)) (discussing the admissibility of other-crime evidence). An appellate court "should not substitute its own judgment for that of the trial

court, unless 'the trial court's ruling was so wide of the mark that a manifest denial of justice resulted.'" State v. Perry, 225 N.J. 222, 233 (2016) (quoting Marrero, 148 N.J. at 484).

Pursuant to N.J.R.E. 404(b):

> evidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that such person acted in conformity therewith. Such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute.

"One of the well-recognized dangers inherent in the admission of so-called 'other-crimes evidence' is that a jury may convict a defendant not for the offense charged, but for the extrinsic offense." State v. Garrison, 228 N.J. 182, 193-94 (2017) (citing State v. Skinner, 218 N.J. 496, 514 (2014)). Accordingly, such evidence must be "examined cautiously because it 'has a unique tendency' to prejudice a jury." Skinner, 218 N.J. at 514 (quoting State v. Reddish, 181 N.J. 553, 608 (2004)).

In State v. Cofield, our Supreme Court established a four-part test "to avoid the over-use of extrinsic evidence of other crimes or wrongs" pursuant to N.J.R.E. 404(b). 127 N.J. at 338. This framework requires:

> 1. The evidence of the other crime must be admissible as relevant to a material issue;

2. It must be similar in kind and reasonably close in time to the offense charged;

3. The evidence of the other crime must be clear and convincing; and

4. The probative value of the evidence must not be outweighed by its apparent prejudice.

[Ibid. (citation omitted).][2]

The trial judge made the following findings, pursuant to Cofield, in determining that evidence of defendant's suspended driver's license was admissible. As to factor one, he found a lack of a driver's license was relevant to defendant's motive and intent because it explained his actions that night. As to factor two, he found while not having a license is not necessarily similar to eluding, it was temporally related and if anything, reduces the prejudicial effect of introducing such evidence. As to factor three, at trial, the State presented and had authenticated defendant's driver's abstract, showing his driver's license was suspended at the time of the incident. As to factor four, he found the probative value outweighed its prejudice, noting "there is no similarity in the types of crimes that are being charged here and license suspension is not really a crime." In addition,

---

[2] We should note that "[t]he second prong of the Cofield test, addressing the similarity and temporality of the evidence, is not found in Rule 404(b), and is not universally required." State v. Rose, 206 N.J. 141, 163 (2011) (citations omitted); see also State v. Williams, 190 N.J. 114, 131 (2007).

the jury was given a limiting instruction that the evidence could only be used to establish motive, not guilt on the underlying offenses.

Even assuming for the sake of argument that defendant conceded he eluded the police, he continued to challenge this conviction, albeit in a lesser eluding charge. Therefore, motive was a critical issue for the jury. Accordingly, for the same cogent reasons set forth detailed above, we affirm the trial judge's decision to allow the jury to consider evidence of defendant's suspended driving license.

## III.

Defendant next asserts the trial court erred when it failed to merge five of the motor vehicle violations into the eluding conviction. Defendant argues the following motor vehicle violations should have been merged: reckless driving, N.J.S.A. 39:4-96; two violations for disregarding a traffic control device, N.J.S.A. 39:4-81; and two violations for improper turns, N.J.S.A. 39:4-123. We agree.

"Merger is based on the principle that an accused who has committed only one offense cannot be punished as if for two." State v. Miller, 108 N.J. 112, 116 (1987) (citation omitted). Essentially, merger seeks to avoid multiple punishments for the same conduct. Ibid. N.J.S.A. 2C:1-8(a)(1) provides, in pertinent

part, that "[w]hen the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense" but not "convicted of more than one offense" unless "[o]ne offense is included in the other."

However, Title 39 "[m]otor vehicle offenses . . . fall within the generic category of petty offenses that do not fit within the Code's definition of a lesser-included criminal offense." State v. Stanton, 176 N.J. 75, 98 (2003) (citations omitted). Accordingly, "N.J.S.A. 2C:1-8 does not apply to motor vehicle violations, only criminal offenses." State v. Frank, 445 N.J. Super. 98, 108 (App. Div. 2016) (citing Stanton, 176 N.J. at 99).

Nevertheless, motor vehicle violations are "consolidated for trial with indicted offenses, not because they are lesser-included criminal offenses of the crimes charged in an indictment, but because our jurisprudence and Rule 3:15-3(a)(1) require consolidation of even Title 39 offenses to avoid double jeopardy problems." Stanton, 176 N.J. at 100-01 (citations omitted). Thus, "it is appropriate to merge the conviction of an offense and motor vehicle violation where their elements and the evidence presented to establish these elements correspond." Frank, 445 N.J. Super. at 108 (citation omitted). In examining merger, we consider the following factors:

the time and place of each purported
violation; whether the proof submitted as to
one count of the indictment would be a
necessary ingredient to a conviction under
another count; whether one act was an integral
part of a larger scheme or episode; the intent
of the accused; and the consequences of the
criminal standards transgressed.

[State v. Allison, 208 N.J. Super. 9, 23-24
(App. Div. 1985) (quoting State v. Davis, 68
N.J. 69, 81-82 (1975)).]

Here, because the five above-mentioned motor vehicle violations are part of one integral scheme, they should have been merged into the second-degree eluding conviction. See e.g., State v. Wallace, 313 N.J. Super. 435, 438-39 (App. Div. 1998), aff'd, 158 N.J. 552 (1999). The reckless driving, improper turns, and disregarding a traffic control device violations all arose out of the same facts and were presented under the same evidence of the second-degree eluding conviction, which requires a danger to life. N.J.S.A. 39:4-96 ("A person who drives a vehicle heedlessly, in willful or wanton disregard of the rights or safety of others, in a manner so as to endanger, or be likely to endanger, a person or property."). Indeed, these motor vehicle violations served as a factual predicate for the higher degree of eluding conviction.

Accordingly, we reverse and remand for the trial court to amend the judgment of conviction consistent with this opinion.

IV.

Lastly, defendant argues the trial judge erred in imposing a near-maximum base term sentence with a near-maximum parole disqualifier. In particular, defendant avers the trial judge applied the wrong standard in imposing a discretionary period of parole ineligibility. He further argues the trial judge afforded undue weight to aggravating factors three, six, and nine, and failed to find mitigating factors one and two.

Review of the trial court's "sentencing decisions is relatively narrow and is governed by an abuse of discretion standard." State v. Blackmon, 202 N.J. 283, 297 (2010). When reviewing a sentence, we consider "whether the trial court has made findings of fact that are grounded in competent, reasonably credible evidence and whether the 'factfinder [has applied] correct legal principles in exercising its discretion.'" Ibid. (quoting State v. Roth, 95 N.J. 334, 363 (1984)).

We will not set aside a trial court's sentence "unless: (1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were not 'based upon competent credible evidence in the record;' or (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (alteration in original) (quoting Roth, 95 N.J. at 364-65).

12

The trial judge sentenced defendant to nine years, with four years of parole ineligibility, for second-degree eluding, concurrent to eighteen months for fourth-degree resisting arrest.

Defendant's argument that the trial judge failed to find mitigating factor one and two is without merit. Mitigating factor one requires "[t]he defendant's conduct neither caused nor threatened serious harm," and mitigating factor two requires "[t]he defendant did not contemplate that his conduct would cause or threaten serious harm[.]" N.J.S.A. 2C:44-1(b)(1) and (2).

Defendant was convicted of second-degree eluding, which requires the "flight or attempt to elude created a <u>risk of death or injury to any person</u>." <u>Model Jury Charges (Criminal)</u>, "Eluding an Officer, N.J.S.A. 2C:29-2b" (rev. Nov. 15, 2004) (emphasis added). Certainly risk of serious harm encompasses "risk of death or injury to any person." Furthermore, the record demonstrates defendant's flight caused potential harm to others, despite his contentions no one was at risk of harm. He greatly exceeded posted speed limits, made two improper turns, drove recklessly, and left the vehicle running and in motion with a passenger inside.

Lastly, defendant's contention the trial judge did not recite the proper standard in imposing a near-maximum parole disqualifier is also unavailing. While defendant contends the trial judge attributed undue weight to aggravating factors three, six, and

nine, he does not assert they are unsupported by the record. Thus, the issue is simply whether the aggravating factors substantially outweighed the mitigating factors. <u>See</u> N.J.S.A. 2C:43-6(b) ("[W]here the court is clearly convinced that the aggravating factors substantially outweigh the mitigating factors, . . . the court may fix a minimum term not to exceed . . . one-half of the term set pursuant to a maximum period of incarceration for a crime . . . ."). In this case, it was within the trial court's sentencing discretion to conclude that in this case, the three aggravating factors substantially outweighed the mitigating factors, so as to warrant the imposition of four years of parole ineligibility on a nine year sentence.

Affirm in part, reverse and remand for resentencing.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1511-15T2