SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**State v. Keith V. Cuff** (A-79-17) (080753)

**Argued February 25, 2019 -- Decided August 6, 2019**

**PATTERSON, J., writing for the Court.**

The Court granted certification limited to two of the issues defendant Keith V. Cuff raised on appeal from his nineteen -- later reduced to eighteen -- convictions: (1) defendant's challenge to his conviction of three counts of first-degree kidnapping on the basis that, although the trial court instructed the jury on the elements of second-degree kidnapping as a lesser-included offense of first-degree kidnapping, the verdict sheet included no question addressing that offense; and (2) defendant's challenge to the trial court's imposition of consecutive sentences, which resulted in an aggregate ninety-eight-year sentence, with more than sixty-six years of parole ineligibility.

Defendant's convictions and sentence relate to six incidents: (1) the June 24, 2010 armed robbery of a Cherry Hill resident in his home, where the victim was left with his hands tied behind his back and his ankles tied together; (2) the February 28, 2011 armed robbery of a Cherry Hill residence after which the parents -- who returned home during the robbery -- and their thirteen- and fourteen-year-old daughters -- who had been tied up for roughly an hour before their parents returned -- were left with their hands tied behind their backs; (3) the March 3, 2011 armed robbery of a Winslow Township man in front of his home; (4) the March 29, 2011 flight from and apprehension by police officers of a man who fled a stolen car; (5) the April 3, 2011 robbery of a family in Gloucester Township, after which a man and his fiancée, daughter, and son were left with their hands tied; and (6) the May 14, 2011 robbery of a man and woman in their home in Sicklerville.

Defendant was charged with fifty-five offenses, including eleven counts of first-degree kidnapping relating to four of the incidents. He was tried before a jury over twelve days. At the close of evidence, the trial court conferred with counsel and prepared a jury charge. The court read the charge to the jury and sent the written instructions into the jury room for use during deliberations.

The jury charge addressed the jury's obligation to consider not only charges set forth in the indictment, but also lesser-included offenses as instructed by the court. In the charge, the trial court addressed the eleven charges of first-degree kidnapping pending against defendant. The court set forth the elements of the first-degree offense, including

1

the element that defendant did not "release[] [the victim] unharmed and in a safe place prior to apprehension." Tracking the pertinent Model Jury Charges, the trial court also instructed the jury about three lesser-included offenses: second-degree kidnapping, third-degree criminal restraint, and the disorderly persons offense of false imprisonment. The verdict sheet provided spaces for the jury to record its verdict as to first-degree kidnapping, third-degree criminal restraint, and the disorderly persons offense of false imprisonment, as well as the other charges pending against defendant. It did not, however, include a space for the jury to determine whether defendant was guilty or not guilty of second-degree kidnapping. Defendant did not object to the verdict sheet.

During deliberations, the jury asked the trial court, "[i]f applicable, how do we denote second-degree on a charge in the verdict book?" After conferring with counsel, the court instructed, "[y]ou answer the questions as they are posed on the verdict sheet. . . . Each individual question as posed." The jury convicted defendant of nineteen charges -- sixteen of the counts charged in the indictment and three lesser-included offenses. The jury convicted defendant of three counts of first-degree kidnapping as to the father and the two daughters from the February 28, 2011 incident in Cherry Hill. The jury acquitted defendant of the other kidnapping charges.

The trial court sentenced defendant. Invoking State v. Yarbough, 100 N.J. 627, 643-44 (1985), the court determined both that certain sentences relating to different criminal episodes should run consecutively and that certain sentences arising from crimes committed in the same criminal episodes should run consecutively. The Appellate Division affirmed the trial court's determinations on the two issues relevant to this appeal: the omission of a reference to second-degree kidnapping on the verdict sheet; and the imposition of consecutive sentences. The Court granted certification limited to those issues. 234 N.J. 315 (2018).

**HELD:** The omission of second-degree kidnapping from the verdict sheet does not constitute plain error. The jury instruction accurately described the State's burden of proof with respect to the elements of both first-degree and second-degree kidnapping, and directed the jury to consider second-degree kidnapping as a lesser-included offense if it did not find defendant guilty of the first-degree offense. Moreover, the evidence presented at trial did not provide a rational basis for a second-degree kidnapping conviction because the victims were not "release[d] . . . unharmed and in a safe place," an element of the second-degree offense. N.J.S.A. 2C:13-1(c). Defendant was properly convicted of three counts of first-degree kidnapping. As to the sentence, the Court agrees with the Appellate Division that the terms imposed for most of defendant's offenses constituted a proper exercise of the trial court's discretion but concludes that the trial court should resentence defendant so that it may consider whether certain offenses committed within the same criminal episode warrant concurrent rather than consecutive sentences, as well as whether the decision to make the sentences consecutive rather than concurrent made the aggregate sentence imposed on defendant an abuse of discretion.

1.  In a prosecution for first-degree kidnapping, the State must prove beyond a reasonable doubt that the victim was harmed or not released in a safe place prior to apprehension. See N.J.S.A. 2C:13-1(b)-(c).  Here, the trial court properly explained that if the jury has "reasonable doubt as to whether the [S]tate has proven beyond a reasonable doubt that [defendant] knowingly harmed or knowingly did not release any of the alleged victims in a safe place prior to his apprehension, you should then find the defendant guilty of kidnap[p]ing in the second degree."  The issue raised by defendant on appeal arose from an omission in the verdict sheet, which listed the elements of first-degree kidnapping and then provided spaces for the jury to record a verdict of either "guilty" or "not guilty."  As to each victim, the verdict sheet instructed the jury to proceed to a question addressing the lesser-included offense of third-degree criminal restraint if it found defendant not guilty of first-degree kidnapping.  The verdict sheet should have included, as to each victim, a similar inquiry about second-degree kidnapping.  Defendant did not object to the omission of those questions, which the Court thus reviews for plain error.  (pp. 16-20)

2.  Where the oral instructions of a court were sufficient to convey an understanding of the elements to the jury, and where the verdict sheet was not misleading, any error in the verdict sheet can be regarded as harmless.  In State v. Galicia, the Court reviewed a verdict sheet that incorrectly "suggested that the jury would only reach the issue of passion/provocation if it found the defendant guilty of murder."  210 N.J. 364, 375 (2012).  The Court found the error harmless because there was no rational basis for the trial court to charge the jury as to the elements of passion/provocation.  Id. at 385, 389. As in Galicia, there is no basis in this case for a finding of plain error.  The jury had the trial court's precise and accurate explanation of the first-degree and second-degree kidnapping standards -- not only as verbally delivered in court, but in written form in the jury room.  The jury clearly understood it could acquit defendant of first-degree offenses and consider lesser-included offenses; indeed, with respect to eight other first-degree kidnapping counts, it either convicted defendant of lesser-included offenses or acquitted him entirely.  The evidence in this case did not provide a rational basis to convict defendant of second-degree kidnapping.  Here, it is undisputed that the three victims were left in their home with their hands tied behind their backs.  Defendant "released" none of them within the meaning of N.J.S.A. 2C:13-1(c).  The Court rejects the argument that the jury's question, which could have pertained to many of the charges pending against defendant, indicates that the jury would have convicted him of second-degree kidnapping had the verdict sheet provided a place to record such a verdict.  (pp. 20-29)

3. In Yarbough, the Court provided guidance for determining whether multiple sentences should run concurrently or consecutively, and directed sentencing courts to consider a collection of qualitative factors, including "facts relating to the crimes," like whether "(a)  the crimes and their objectives were predominantly independent of each other; (b)  the crimes involved separate acts of violence or threats of violence; (c)  the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior; (d)  any of

3

the crimes involved multiple victims; [and] (e) the convictions for which the sentences are to be imposed are numerous." Id. at 643-44. A sentencing court must explain its decision to impose concurrent or consecutive sentences in a given case. When a court fails to give proper reasons for imposing consecutive sentences at a single sentencing proceeding, ordinarily a remand should be required for resentencing. (pp. 30-33)

4. Defendant was sentenced for nineteen offenses committed in three separate criminal episodes. The trial court properly applied the Yarbough factors when it sentenced defendant to terms of incarceration running consecutively to the terms imposed for crimes committed in different criminal episodes. The court's analysis upon imposing a consecutive sentence for the first-degree kidnapping of the fourteen-year-old victim during the February 28, 2011 incident also satisfied Yarbough because she and her sister were kidnapped approximately one hour before the first-degree kidnapping of her father and the third-degree criminal restraint of her mother. (pp. 33-35)

5. In sentencing defendant to consecutive terms for offenses committed within a single criminal episode, however, the trial court set forth findings that do not satisfy Yarbough, warranting a remand for resentencing with respect to those offenses. The Court instructs that those determinations be reconsidered on remand and that a more detailed explanation of the court's reasoning be provided. In resentencing defendant on remand, the trial court should consider the fairness of the aggregate sentence imposed for the eighteen offenses as to which defendant's convictions have been affirmed -- a necessary feature in any Yarbough analysis. (pp. 35-38)

**The judgment of the Appellate Division is affirmed in part and reversed in part. The Court vacates defendant's sentence, remands for resentencing, and retains jurisdiction to review the sentence imposed on remand.**

**JUSTICE ALBIN, dissenting in part,** stresses that none of the parties suggested at trial, before the Appellate Division, or in the briefing before this Court that there was not a rational basis for charging second-degree kidnapping. In Justice Albin's view, the trial court properly charged on second-degree kidnapping and, because, the verdict sheet did not allow the jury to return a verdict on that count, that omission constituted plain error -- an error clearly capable of producing an unjust result. See R. 2:10-2. Defendant had a right to fair consideration of all lesser-included offenses rationally based in the record, Justice Albin explains, and the defective jury verdict form deprived him of that right. Defendant therefore should receive a new trial, in Justice Albin's view. Justice Albin concurs with the sentencing portion of the majority's opinion.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, FERNANDEZ-VINA, and TIMPONE join in JUSTICE PATTERSON'S opinion. JUSTICE ALBIN filed an opinion, dissenting in part. JUSTICE SOLOMON did not participate.**

4

# SUPREME COURT OF NEW JERSEY
## A-79 September Term 2017
### 080753

---

State of New Jersey,

Plaintiff-Respondent,

v.

Keith V. Cuff,

Defendant-Appellant.

---

On certification to the Superior Court,
Appellate Division.

---

| Argued | Decided |
|--------|---------|
| February 25, 2019 | August 6, 2019 |

---

Tamar Y. Lerer, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Tamar Y. Lerer, of counsel and on the briefs).

Maura Murphy Sullivan, Assistant Prosecutor, argued the cause for respondent (Mary Eva Colalillo, Camden County Prosecutor, attorney; Nancy P. Scharff, Assistant Prosecutor, of counsel and on the briefs).

Evgeniya Sitnikova, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Gurbir S. Grewal, Attorney General, attorney; Evgeniya Sitnikova, of counsel and on the brief).

1

The State indicted defendant Keith V. Cuff for fifty-five offenses arising from five residential robberies and an additional incident in which defendant stole a vehicle while attempting to escape from a traffic stop. A jury convicted defendant of nineteen of those offenses, including three counts of first-degree kidnapping while in possession of a firearm contrary to N.J.S.A. 2C:13-1(b)(1). The trial court sentenced defendant to an aggregate ninety-eight-year sentence, with more than sixty-six years of parole ineligibility. The Appellate Division affirmed defendant's conviction and sentence with respect to all but one of the offenses, and reduced his sentence to an aggregate ninety-year sentence, with more than sixty-four years' parole ineligibility. We granted defendant's petition for certification, limited to two of the issues that he raised on appeal.

First, we review defendant's challenge to his conviction of three counts of first-degree kidnapping. Pursuant to N.J.S.A. 2C:13-1, when the State proves the elements of first-degree kidnapping, but fails to demonstrate that a defendant did not "release[] the victim unharmed and in a safe place prior to [the defendant's] apprehension," the defendant is guilty of kidnapping in the second degree. N.J.S.A. 2C:13-1(c). Although the trial court instructed the

2

jury on the elements of second-degree kidnapping as a lesser-included offense of first-degree kidnapping, the verdict sheet included no question addressing that offense. Defendant did not object to that omission at trial. He contends on appeal, however, that his convictions on the first-degree kidnapping charges should be reversed by virtue of the error in the verdict sheet.

We hold that the omission of second-degree kidnapping from the verdict sheet does not constitute plain error. The jury instruction, which the trial court read to the jury and provided in written form to be used during deliberations, accurately described the State's burden of proof with respect to the elements of both first-degree and second-degree kidnapping, and directed the jury to consider second-degree kidnapping as a lesser-included offense if it did not find defendant guilty of the first-degree offense. The jury found that the State proved beyond a reasonable doubt all elements of the offense of first-degree kidnapping.

Moreover, the evidence presented at trial did not provide a rational basis for a second-degree kidnapping conviction. That evidence established that defendant left the victims in question -- a father and his two young daughters -- in their home with their hands tied behind their backs. Those victims were not "release[d] . . . unharmed and in a safe place," an element of the second-

3

degree offense. N.J.S.A. 2C:13-1(c). We therefore hold that defendant was properly convicted of three counts of first-degree kidnapping.

Second, we review defendant's challenge to the trial court's imposition of consecutive sentences. Defendant contends that the court misapplied the factors prescribed in State v. Yarbough, 100 N.J. 627, 643-44 (1985), when it imposed those sentences. We agree with the Appellate Division that the terms of incarceration imposed for most of defendant's offenses constituted a proper exercise of the trial court's discretion. We conclude, however, that the trial court should resentence defendant so that it may consider whether certain offenses committed within the same criminal episode warrant concurrent rather than consecutive sentences, as well as whether the decision to make the sentences consecutive rather than concurrent made the aggregate sentence imposed on defendant an abuse of discretion. We therefore vacate defendant's sentence and remand for resentencing.

Accordingly, we affirm in part and reverse in part the Appellate Division's judgment, and retain jurisdiction to review the sentence imposed on remand.

I.

A.

We derive our summary of the six incidents that gave rise to this matter from the record of defendant's trial.

On June 24, 2010, a Cherry Hill resident was robbed in his home by three men, one of whom carried a weapon. According to the victim, the men stole cash, traveler's checks, and a watch. The victim was left in the home with his hands tied behind his back and his ankles tied together.

On February 28, 2011, two armed men entered a family's Cherry Hill residence when only the children were at home. Two of the children were asleep, but the men encountered a fourteen-year-old girl and a thirteen-year-old girl. They tied the girls' hands behind their backs, and detained them in an upstairs room. When the parents came home about an hour later, the men accosted the father at gunpoint, took about two thousand dollars in cash from him, and demanded access to his safe. The men tied the mother's hands behind her back, forced the husband to turn the alarm system off, brought him to the basement, and tied his hands behind his back. After the men left, the father was able to unbind his hands. He went upstairs, untied his wife's hands, located his daughters, and freed them.

On March 3, 2011, a resident of Winslow Township arrived at his home and was confronted by two men, one of whom pointed a gun at the back of his neck. The men stole approximately two thousand dollars in cash from the man and took his car, which was recovered later that night.

On March 29, 2011, a Gloucester Township police officer noticed a car matching the description of a vehicle reported to have been involved in an incident unrelated to the crimes involved in this matter. The officer turned his patrol vehicle around to follow the car, which pulled onto the shoulder of the road. The officer saw a man exit the car via the passenger door and run away. The officer approached and questioned the driver, who claimed not to know the name of the person who had fled his car. The officer called for backup, and responding officers were able to apprehend the fleeing suspect. As officers tracked the suspect, they found two handguns. They later discovered that the vehicle from which the man had fled had been stolen six months earlier.

Another robbery took place on April 3, 2011 in Gloucester Township. Arriving at his home, a man was confronted by two men wearing masks who demanded he open his safe, from which the men took money. The two men then tied the hands of the man, his fiancée, his daughter, and his son, transported the two adults into the bathroom, and placed them into the bathtub.

6

After warning the victims not to move for five minutes, the two men left the home.

On May 14, 2011, a man and a woman arrived at their home in Sicklerville and were confronted by three men, one of whom pointed a gun at them. Two of the men forced the man to open his safe and took about two thousand dollars, a watch, a computer, and silver. The three men then left the home.

## B.

Defendant was charged with fifty-five offenses. He and his codefendants, Tamir Logan and Dante Goree, were charged with first-degree kidnapping, first-degree robbery, and other offenses in connection with the June 24, 2010 incident in Cherry Hill. Defendant alone was charged with four counts of first-degree kidnapping, two counts of first-degree robbery, and other offenses in connection with the February 28, 2011 incident in Cherry Hill. He and codefendant Abdul Mansaray were charged with first-degree robbery and other offenses in connection with the March 3, 2011 incident in Winslow Township. Defendant was charged with second-degree unlawful possession of a weapon and third-degree theft of an automobile in connection with the March 29, 2011 incident in Gloucester Township. He and codefendant Mansaray were charged with four counts of first-degree kidnapping and other offenses in

7

connection with the April 3, 2011 incident in Gloucester Township.  Defendant alone was charged with first-degree robbery in connection with the April 3, 2011 incident in Gloucester Township.  Finally, defendant and codefendants Logan and Goree were charged with two counts of first-degree kidnapping, two counts of first-degree robbery, and other offenses in connection with the May 14, 2011 incident in Sicklerville.[1]

Defendant moved to sever the charges so that the charges relevant to each incident would be adjudicated in separate trials.  The trial court denied the motion.

Defendant and Logan were tried before a jury over twelve days.  The State presented the testimony of ten of the victims, two cooperating witnesses, investigating officers from several police departments, and other law enforcement personnel.

At the close of the evidence, the trial court conferred with counsel and prepared a jury charge.  The court read the charge to the jury and sent the written instructions into the jury room for use during deliberations.

---

[1] Mansaray and Goree entered into plea agreements with the State and pled guilty to certain charges against them prior to trial.

The jury charge addressed the jury's obligation to consider not only charges set forth in the indictment, but also lesser-included offenses as instructed by the court.

In the charge, the trial court addressed the eleven charges of first-degree kidnapping pending against defendant and the three first-degree kidnapping charges pending against Logan.

The court set forth the elements of the first-degree offense, including the element that defendant did not "release[] [the victim] unharmed and in a safe place prior to apprehension." Tracking the pertinent Model Jury Charges, the trial court also instructed the jury about three lesser-included offenses: second-degree kidnapping, N.J.S.A. 2C:13-1(c)(1); third-degree criminal restraint, N.J.S.A. 2C:13-2; and the disorderly persons offense of false imprisonment, N.J.S.A. 2C:13-3.

The verdict sheet provided spaces for the jury to record its verdict as to first-degree kidnapping, third-degree criminal restraint, and the disorderly persons offense of false imprisonment, as well as the other charges pending against defendant. It did not, however, include a space for the jury to determine whether defendant was guilty or not guilty of second-degree kidnapping. Defendant did not object to the verdict sheet.

9

During deliberations, the jury asked the trial court, "[i]f applicable, how do we denote second-degree on a charge in the verdict book?" After conferring with counsel, the court instructed, "[y]ou answer the questions as they are posed on the verdict sheet. . . . Each individual question as posed. You, the jury, are not to be concerned about the degree of the crime. That is in the Court's domain."

The jury convicted defendant of nineteen charges -- sixteen of the counts charged in the indictment and three lesser-included offenses.

With respect to the February 28, 2011 incident in Cherry Hill, the jury convicted defendant of nine charged counts and one lesser-included offense: three counts of first-degree kidnapping, in which the victims were the father and the daughters; one count of false imprisonment as a lesser-included offense of first-degree kidnapping, in which the victim was the mother; one count of first-degree robbery, N.J.S.A. 2C:15-1; one count of second-degree burglary, N.J.S.A. 2C:18-2; one count of fourth-degree aggravated assault with a firearm, N.J.S.A. 2C:12-1(b)(4); one count of second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4; one count of second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); and one count of second-degree conspiracy to commit "robbery and/or kidnapping," N.J.S.A. 2C:5-2, N.J.S.A. 2C:15-1, and N.J.S.A. 2C:13-1(b)(1). The jury acquitted

10

defendant of another count of first-degree robbery and a lesser-included offense to that charge, and did not reach a verdict as to six other charges arising from that incident.

With respect to the March 3, 2011 incident in Winslow Township, the jury convicted defendant of five charged counts and one lesser-included offense: one count of first-degree robbery; one count of second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:15-1; one count of second-degree possession of a weapon for an unlawful purpose; one count of second-degree unlawful possession of a weapon; one count of fourth-degree aggravated assault with a firearm; and one count of fourth-degree unlawful taking of a means of conveyance, N.J.S.A. 2C:20-10(b), as a lesser-included offense of third-degree theft of an automobile, N.J.S.A. 2C:20-10(c).

With respect to the March 29, 2011 incident involving the stolen car, the jury convicted defendant of one charged count and one lesser-included offense: one count of second-degree unlawful possession of a weapon; and one count of unlawful taking of a means of conveyance as a lesser-included offense of third-degree theft of an automobile.

Finally, the jury convicted defendant of second-degree conspiracy to commit "robbery and/or kidnapping" in connection with the April 3, 2011 incident in Gloucester Township. It acquitted defendant of all other charges,

11

including four counts of first-degree kidnapping, in connection with that incident.

The jury acquitted defendant of all charges in connection with the June 24, 2010 incident in Cherry Hill, including one count of first-degree kidnapping, and acquitted him of all charges in connection with the May 14, 2011 incident in Sicklerville.

C.

The trial court sentenced defendant. It found and weighed heavily aggravating factors three, "[t]he risk that the defendant will commit another offense;" six, "[t]he extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted;" and nine, "[t]he need for deterring the defendant and others from violating the law." N.J.S.A. 2C:44-1(a)(3), (6), (9). It found no mitigating factors and concluded that the aggravating factors substantially outweighed the mitigating factors.

Invoking Yarbough, 100 N.J. at 643-44, the court determined both that certain sentences relating to different criminal episodes should run consecutively and that certain sentences arising from crimes committed in the same criminal episodes should run consecutively.

The court imposed an aggregate term of ninety-eight years' incarceration with more than sixty-six years' parole ineligibility.

12

D.

Defendant appealed his convictions and sentence. The Appellate Division affirmed in part and reversed in part the trial court's judgment and remanded the matter for further proceedings.

The Appellate Division affirmed the trial court's determinations on the two issues relevant to this appeal: the omission of a reference to second-degree kidnapping on the verdict sheet; and the imposition of consecutive sentences. It held that the error on the verdict sheet was harmless. It noted that the jury charge, to which the jury had access during deliberations, was proper, that there was no objection to the verdict sheet, and that a conviction of second-degree kidnapping would have required the jury to find that the victims were released unharmed in a safe place prior to defendant's apprehension, N.J.S.A. 2C:13-1(c), despite "compelling evidence that defendant had left the victims tied up."

With respect to the sentence, the Appellate Division concluded that the trial court properly exercised its discretion in imposing consecutive terms of incarceration for certain offenses.

The Appellate Division vacated defendant's conviction of second-degree conspiracy to commit "robbery and/or kidnapping," finding that the trial court's instruction improperly combined two distinct conspiracy charges and

13

that the jury may not have unanimously convicted defendant for a single offense.  As a result of that ruling, defendant's sentence was reduced to an aggregate ninety years' incarceration, with sixty-four years' parole ineligibility.

The Appellate Division rejected defendant's remaining arguments.

E.

We granted defendant's petition for certification, "limited to the issues of the verdict sheet's omission of the charge of second-degree kidnapping and the trial court's imposition of consecutive sentences."  234 N.J. 315 (2018).  We also granted the application of the Attorney General to appear as amicus curiae.

II.

A.

Defendant argues that although the jury instructions were proper, they did not cure the omission of second-degree kidnapping from the verdict sheet.  Citing the question asked by the jury during deliberations, defendant asserts that the jury intended to find him guilty of second-degree kidnapping as a lesser-included offense of one or more of defendant's first-degree kidnapping charges.  Defendant contends that the evidence supported second-degree kidnapping charges regarding the February 28, 2011 incident in Cherry Hill

14

because the father untied himself and freed his daughters soon after defendant left their home. Defendant also contends that his ninety-year aggregate sentence constituted excessive punishment for crimes in which no victim was killed or injured. He asserts that the trial court misapplied the Yarbough factors in several respects, and that the court should not have imposed consecutive sentences for multiple offenses stemming from a single criminal episode.

The State argues that any error in the verdict sheet was not plain error but harmless error because the trial court properly instructed the jury regarding second-degree kidnapping and the State proved that defendant did not release the victims unharmed in a safe place prior to defendant's apprehension. It contends that defendant's reliance on the jury question about second-degree charges is misplaced because the jury did not specify the charge to which it referred. The State also asserts that the trial court adequately applied the Yarbough factors and explained its rationale for imposing consecutive sentences.

The Attorney General, as amicus curiae, contends that the lack of a second-degree kidnapping charge on the verdict sheet prejudiced the State, not defendant, because the omission may have encouraged the jury to consider the lesser-included offenses of a lower degree, and that any error was harmless.

15

The Attorney General also argues that the trial court's imposition of consecutive sentences was proper because defendants' crimes were primarily independent of one another: they involved separate acts and threats of violence against multiple victims, at different times, in different locations, and with independent objectives.

## III.

## A.

We first consider defendant's argument that the Court should vacate his conviction of three counts of first-degree kidnapping because the verdict sheet diverged from the jury charge and omitted a question regarding the lesser-included offense of second-degree kidnapping.

Our Code of Criminal Justice provides that a defendant is guilty of kidnapping:

> b. [I]f he unlawfully confines another for a substantial period, with any of the following purposes:
>
> > (1) To facilitate commission of any crime or flight thereafter;
> >
> > (2) To inflict bodily injury on or to terrorize the victim or another;
> >
> > (3) To interfere with the performance of any governmental or political function; or

(4) To permanently deprive a parent, guardian, or other lawful custodian of custody of the victim.

c. Grading of kidnapping.

(1) Except as provided in paragraph (2) of this subsection, kidnapping is a crime of the first degree. . . . If the actor releases the victim unharmed and in a safe place prior to apprehension, it is a crime of the second degree.

[N.J.S.A. 2C:13-1(b)-(c).]

In a prosecution for first-degree kidnapping, the State must "prove beyond a reasonable doubt either that the victim was harmed or not released in a safe place prior to apprehension." State v. Federico, 103 N.J. 169, 174 (1986); State v. Sherman, 367 N.J. Super. 324, 330 (App. Div. 2004). The distinction between the first- and second-degree crimes is intended to ensure the safety of the victim. See Federico, 103 N.J. at 175 (noting concern of Model Penal Code drafters to "maximize [a] kidnapper's incentive to return the victim alive by making first[-]degree penalties apply only if the victim is not 'released alive in a safe place'" (quoting 2 The New Jersey Penal Code: Final Report, cmt. 7 on N.J.S.A. 2C:13-1 at 187 (Criminal Law Revision Comm'n 1971)).[2]

_____

[2] The distinction between first- and second-degree kidnapping has a significant impact on a defendant's sentencing exposure. A defendant convicted of first-degree kidnapping faces a term of fifteen to thirty years'

17

At defendant's trial, the trial court accurately explained first-degree kidnapping and the lesser-included offense of second-degree kidnapping to the jury. The court charged the jury to first determine whether the State proved beyond a reasonable doubt the other elements of first-degree kidnapping, and if so, to decide "whether the [S]tate has also proven beyond a reasonable doubt that [defendant] knowingly harmed or knowingly did not release any of the alleged victims in a safe place prior to apprehension." After discussing the "harm" and "released in a safe place" provisions, the court explained the distinction between first- and second-degree kidnapping:

> If you find that the [S]tate has proven beyond a reasonable doubt that the defendant is guilty of kidnap[p]ing[,] but you have reasonable doubt as to whether the [S]tate has proven beyond a reasonable doubt that he knowingly harmed or knowingly did not release any of the alleged victims in a safe place prior to his apprehension, you should then find the defendant guilty of kidnap[p]ing in the second degree. If you find beyond a reasonable doubt that the defendant is guilty of kidnap[p]ing and that he knowingly harmed or knowingly did not release any of the alleged victims in a safe place prior to his apprehension, you should then find the defendant guilty of kidnap[p]ing in the first degree.

incarceration, N.J.S.A. 2C:13-1(c)(1), and a defendant convicted of second-degree kidnapping faces a term of five to ten years' incarceration, N.J.S.A. 2C:43-6(a)(2).

As the parties agree, the trial court's jury instructions properly explained to the jury the elements of both first- and second-degree kidnapping.

The issue raised by defendant on appeal arose from an omission in the verdict sheet. The verdict sheet presented to the jury the question whether the State had met its burden to prove first-degree kidnapping in violation of N.J.S.A. 2C:13-1(b) and (c). As to each victim, the verdict sheet provided:

> On or about the 28th day of February, 2011, in the Township of Cherry Hill, in the County of Camden, State of New Jersey, the defendant, KEITH CUFF, did:
>
> 1. unlawfully confine [the victim] for a substantial period;
>
> 2. with the purpose to inflict bodily injury on and/or terrorize [the victim] and/or to facilitate the commission of any crime or flight thereafter;
>
> AND
>
> 3. did not release [the victim] unharmed and in a safe place prior to apprehension.

The verdict sheet then provided spaces for the jury to record a verdict of either "guilty" or "not guilty." As to each victim, the verdict sheet instructed the jury to proceed to a question addressing the lesser-included offense of third-degree criminal restraint if it found defendant not guilty of first-degree kidnapping, and to proceed to a question addressing the use of a firearm in the kidnapping if it found defendant guilty of the first-degree kidnapping charge.

19

In order to conform to the jury charge, the verdict sheet should have included, as to each victim, an inquiry about second-degree kidnapping as a lesser-included offense of first-degree kidnapping, mirroring questions regarding the two other lesser-included offenses to first-degree kidnapping: third-degree criminal restraint; and the disorderly persons offense of false imprisonment. Defendant did not object to the omission of those questions. See R. 3:19-1(b) (providing for objections to verdict sheets).

B.

1.

When the party alleging error failed to object at trial to the verdict sheet, this Court reviews the verdict sheet for plain error. State v. Galicia, 210 N.J. 364, 386 (2012). That standard requires that we determine whether the error asserted "is of such a nature as to have been clearly capable of producing an unjust result." R. 2:10-2.

We recognize the importance of the verdict sheet as "an essential component" of the trial court's "road map" for the jury's deliberations. Galicia, 210 N.J. at 387; see also State v. Diaz, 144 N.J. 628, 644 (1996) ("When multiple offenses are submitted to a jury, special verdicts are often helpful to an orderly deliberative process."). We appreciate that "[j]urors are likely to refer, and refer often, to the directions on the verdict form." State v.

20

Nelson, 173 N.J. 417, 449 (2002). Thus, "we encourage completeness and consistency in the preparation of verdict sheets." State v. Gandhi, 201 N.J. 161, 198 (2010).

The trial court's instructions to the jury, however, serve as the jury's primary guide as it considers the charges and the evidence. Id. at 196 ("A verdict sheet is intended for recordation of the jury's verdict and is not designed to supplement oral jury instructions"). Thus, "[w]here we conclude that the oral instructions of a court were sufficient to convey an understanding of the elements to the jury, and where we also find that the verdict sheet was not misleading, any error in the verdict sheet can be regarded as harmless." Id. at 197.

In Galicia, we reviewed for plain error a verdict sheet addressing the passion/provocation manslaughter statute, which reduces a defendant's offense from murder to manslaughter when "a homicide which would otherwise be murder under [N.J.S.A.] 2C:11-3, other than felony murder, is 'committed in the heat of passion resulting from a reasonable provocation.'" 210 N.J. at 378-79 (quoting N.J.S.A. 2C:11-4(b)(2)). There, the verdict sheet submitted to the jury at trial incorrectly "suggested that the jury would only reach the issue of passion/provocation if it found the defendant guilty of murder." Id. at 375.

21

Rejecting the Appellate Division's conclusion that the mistaken instructions on the verdict sheet did not constitute error, we held that

> the verdict sheet error in this case was not a simple omission easily rectified by the jury charge. The jury had no copy of the trial court's instructions in the jury room. It had only the verdict sheet as a written guide to structure its deliberations, and that verdict sheet directed it not to reach the issue of passion/provocation unless it found the defendant guilty of murder. That direction may have prevented the jury from considering passion/provocation simultaneously with its determination of defendant's guilt or innocence on the murder charge, as required by N.J.S.A. 2C:11-4(b)(2) and State v. Coyle, 119 N.J. 194, 223-24 (1990).
>
> [Id. at 387.]

We noted, however, the defendant's position that when he committed the crime, he was "not motivated by rage, rejection, jealousy or a prior physical attack, but by nervousness, panic and confusion," as well as his decision not to argue passion/provocation manslaughter or to seek a jury charge on that issue. Id. at 389. In light of the trial evidence, we concluded that there was no rational basis for the trial court to charge the jury as to the elements of passion/provocation, and that the evidence would not have supported a jury finding on that issue. Id. at 385, 389. We therefore found the error in the verdict sheet to be harmless. Id. at 389.

As in Galicia, there is no basis in this case for a finding of plain error. As it deliberated, the jury had the trial court's precise and accurate explanation

22

of the first-degree and second-degree kidnapping standards -- not only as verbally delivered in court, but in written form in the jury room.  Those instructions clearly directed the jury not to consider the lesser-included offenses of the charged count of first-degree kidnapping -- second-degree kidnapping, criminal restraint, and false imprisonment -- unless it found defendant not guilty of the first-degree offense.  The jury clearly understood that it could acquit defendant of first-degree offenses and consider lesser-included offenses; indeed, with respect to eight other first-degree kidnapping counts, it either convicted defendant of lesser-included offenses or acquitted him entirely.  As to the kidnapping charges involving the father and his two daughters in the February 28, 2011 incident in Cherry Hill, however, the jury decided that the State had met its burden to prove each element of the first-degree offense.

Just as the evidence in <u>Galicia</u> did not provide a rational basis for passion/provocation manslaughter, the evidence in this case likewise did not provide a rational basis to convict defendant of second-degree kidnapping. Such a verdict would require the jury to conclude that the State failed to meet its burden to prove that defendant did not "release" the victims "unharmed and in a safe place" prior to his apprehension.

The term "release" denotes "[t]he action of freeing or the fact of being freed from restraint or confinement." Black's Law Dictionary 1408 (10th ed. 2014). Consistent with N.J.S.A. 2C:13-1(c)'s plain meaning, we acknowledged that a defendant who forced a taxi driver to drive a substantial distance at gunpoint, after which he departed the taxi, leaving the driver uninjured, had released that victim "unharmed and in a safe place," and was properly charged with second-degree kidnapping rather than first-degree kidnapping. State v. Jackson, 211 N.J. 394, 398, 414 n.3 (2012). Similarly, the Appellate Division noted that second-degree kidnapping was the appropriate charge for a defendant who had handcuffed and confined a victim in an undisclosed location for approximately six hours but then removed her handcuffs and permitted her to leave, such that she was "released unharmed and in a safe place" within the meaning of N.J.S.A. 2C:13-1(c). State v. Marchand, 227 N.J. Super. 92, 94-95 (App. Div. 1988).

This appeal presents a stark contrast to those cases. Here, it is undisputed that the three victims were left in their home with their hands tied behind their backs -- the father forced into the basement and his daughters in an upstairs room. Defendant "released" none of them within the meaning of N.J.S.A. 2C:13-1(c).

24

Defendant argues that the evidence provided a rational basis for a jury verdict of guilty on the charge of second-degree kidnapping because the adult male victim managed to free himself, and then free his daughters, after defendant left their home. For the provision to apply, however, it must be "the actor" in the kidnapping -- not a police officer, not a bystander, and not the victim himself -- who releases the victim. N.J.S.A. 2C:13-1(c). In this case, the adult victim's fortuitous opportunity to free himself and his daughters after defendant's departure does not support a second-degree kidnapping verdict.

Notwithstanding the lack of a rational basis for a guilty verdict on second-degree kidnapping, defendant asserts that the question posed by the jury indicates that the jury would have convicted him of that charge had the verdict sheet provided a place to record such a verdict. We disagree. Without reference to the crime of kidnapping or any other specific offense, the jury asked only how it would "denote second-degree on a charge in the verdict book." Its inquiry could have pertained to many of the charges pending against defendant. We decline to speculate about the meaning of that question.

2.

Our concurring and dissenting colleague asserts two arguments in support of the contention that the error in the verdict sheet warrants reversal of defendant's first-degree kidnapping convictions. First, our dissenting

25

colleague surmises that the jury's generic question to the trial court -- "[i]f applicable, how do we denote second degree on a charge in the verdict book?" -- related to the two first-degree charges for which the jury convicted defendant, not to the other sixteen first-degree charges that the jury considered. Post at ___ (slip op. at 3). Second, our dissenting colleague argues that, in our harmless error analysis, we have considered an argument that was not properly raised by the State and have displaced the jury in the role of factfinder. Post at ___ (slip op. at 6). Neither contention has merit.

When it asked the trial court about how to "denote" a second-degree charge, the jury had before it a verdict sheet requiring it to answer 115 questions, 62 of which related to the nineteen first-degree charges pending against defendant. The verdict sheet properly focused on the elements of each offense, and did not use the terms "first-degree" or "second-degree" to categorize the various charges.[3] The jury's question could have related to any of the first-degree charges -- the five on which defendant was convicted, the

---

[3] The dissent's contention that the jury's question could not have related to the robbery charges pending against defendant because the verdict sheet addressed the elements of second-degree robbery, post at ___ (slip op. at 2-3), is unpersuasive. As with respect to the kidnapping charges, the verdict sheet pages that addressed robbery charges did not specify whether those charges were first- or second-degree charges. Thus, there is no way to exclude the possibility that the jury was inquiring, in whole or in part, about the robbery charges when it asked its question about second-degree offenses.

twelve on which defendant was acquitted, or the one on which defendant was convicted of a lesser-included offense -- or to any of the twenty-three second-degree charges.  Alternatively, the jury's question could have pertained to no charge in particular.  There is simply no basis for any speculation -- let alone our dissenting colleague's certainty -- as to the import of the jury's question.

We also respectfully disagree with our dissenting colleague's suggestion that, in our harmless error analysis, we have improperly considered a question that was not before the Court.  The dissent contends that we granted certification to consider whether "the verdict sheet and the trial court's erroneous response to the jury's question precluded the jury from convicting defendant of second-degree kidnapping."  Post at ___ (slip op. at 5).  That quotation is not from the Court's grant of certification, but from defendant's brief to the Appellate Division.  As framed by the Court, the grant of certification generally related to "the verdict sheet's omission of the charge of second-degree kidnapping" and the imposition of consecutive sentences.  234 N.J. 315.  There is no support for the dissent's contention that our grant of certification was a "shorthand" for the defendant's argument.  Post at ___ (slip op. at 5).

More importantly, even the question that the dissent frames incorporates the issue whether any error regarding the verdict sheet was harmless; a

27

contention raised by the State before the Appellate Division and this Court. See R. 2:10-2. The State had no obligation to file a cross-petition to argue harmless error before this Court, as the dissent contends that it did. Post at ___ (slip op. at 5). Moreover, in its brief before the Appellate Division, and again in the brief that it submitted to this Court, the State pointed out that the victims in the February 28, 2011 incident in Cherry Hill were not "release[d] . . . unharmed" within the meaning of N.J.S.A. 2C:13-1(c) when defendant left their home. Our dissenting colleague's claim that the State waived its argument -- a claim that not even defendant made in this case **--** is unsupported by the record.

Finally, our dissenting colleague contends that by considering whether there was a rational basis to convict defendant of second-degree kidnapping under N.J.S.A. 2C:13-1(c) as part of our harmless error analysis in this appeal, we have somehow encroached upon the jury's province as factfinder. Post at ___ (slip op. at 6). Appellate courts properly consider whether the evidence presented at trial provides a rational basis for a conviction on a given charge, either in the context of harmless error, see Galicia, 210 N.J. at 384-86; State v. Coyle, 119 N.J. 194, 224 (1990), or in the setting of a dispute as to whether a trial court should have instructed the jury, at the defendant's request, as to a lesser-included offense or other issues, see State v. Crisantos, 102 N.J. 265,

28

274-82 (1986); State v. Messino, 378 N.J. Super. 559, 581-82 (App. Div. 2005); State v. Bryant, 288 N.J. Super. 27, 36 (App. Div. 1996). Nothing in that inquiry -- a legal determination -- constitutes an encroachment upon the jury's exclusive province as the factfinder. To the contrary, that analysis is central to the question whether an error is "clearly capable of producing an unjust result." R. 2:10-2.

The record strongly supports the conclusion that the jury understood the elements of first-degree kidnapping and concluded that the State met its burden to prove those elements. The court's instruction on second-degree kidnapping only further underscored the distinction between the two offenses. The evidence did not provide a rational basis for the jury to conclude that defendant "release[d] . . . unharmed" the victims of the kidnapping on February 28, 2011 in Cherry Hill, N.J.S.A. 2C:13-1(c), because those victims were not released; they were left bound. To conclude otherwise ignores the plain language of the statute. The error in the verdict sheet was harmless.

3.

Accordingly, we hold that the omission in the verdict sheet of questions regarding second-degree kidnapping did not constitute plain error. We concur with the Appellate Division's judgment affirming defendant's conviction of three counts of first-degree kidnapping.

29

IV.

A.

We next consider defendant's challenge to the consecutive terms of incarceration imposed on him.

We review defendant's sentence "in accordance with a deferential standard," State v. Fuentes, 217 N.J. 57, 70 (2014), and note that appellate courts should not "substitute their judgment for those of our sentencing courts," State v. Case, 220 N.J. 49, 65 (2014). That deference "applies only if the trial judge follows the Code and the basic precepts that channel sentencing discretion," however. Ibid. Here, the relevant principles are derived from the statute that governs the imposition of multiple sentences and case law interpreting and applying that statute.

N.J.S.A. 2C:44-5(a) provides that "[w]hen multiple sentences of imprisonment are imposed on a defendant for more than one offense, including an offense for which a previous suspended sentence or sentence of probation has been revoked, such multiple sentences shall run concurrently or consecutively as the court determines at the time of sentence" subject to two limitations, neither of which applies here. In Yarbough, we noted the lack of "specific criteria stated in the Code" for determining whether multiple sentences should run concurrently or consecutively, and we resolved to

30

"fashion standards for discretion that will best further the purposes of the Code." 100 N.J. at 636. We directed sentencing courts to consider:

(1) there can be no free crimes in a system for which the punishment shall fit the crime;

(2) the reasons for imposing either a consecutive or concurrent sentence should be separately stated in the sentencing decision;

(3) some reasons to be considered by the sentencing court should include facts relating to the crimes, including whether or not:

(a) the crimes and their objectives were predominantly independent of each other;

(b) the crimes involved separate acts of violence or threats of violence;

(c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;

(d) any of the crimes involved multiple victims;

(e) the convictions for which the sentences are to be imposed are numerous;

(4) there should be no double counting of aggravating factors; [and]

(5) successive terms for the same offense should not ordinarily be equal to the punishment for the first offense.

[Id. at 643-44.][4]

The Yarbough factors are qualitative, not quantitative; applying them involves more than merely counting the factors favoring each alternative outcome. See State v. Molina, 168 N.J. 436, 442-43 (2001) (affirming consecutive sentences although "the only factor that support[ed] consecutive sentences [was] the presence of multiple victims"); State v. Carey, 168 N.J. 413, 427-28 (2001) (holding that "a sentencing court may impose consecutive sentences even though a majority of the Yarbough factors support concurrent sentences").

A sentencing court must explain its decision to impose concurrent or consecutive sentences in a given case; "[a] statement of reasons is a necessary prerequisite for adequate appellate review of sentencing decisions." State v. Miller, 108 N.J. 112, 122 (1987). When a court "fails to give proper reasons for imposing consecutive sentences at a single sentencing proceeding,

---

[4] In Yarbough, the Court identified a sixth factor: "there should be an overall outer limit on the cumulation of consecutive sentences for multiple offenses not to exceed the sum of the longest terms (including an extended term, if eligible) that could be imposed for the two most serious offenses." Id. at 644. That factor is no longer part of the Yarbough inquiry because the Legislature amended N.J.S.A. 2C:44-5(a) to provide that "'[t]here shall be no overall outer limit on the cumulation of consecutive sentences,' thereby eliminating guideline number six." State v. Carey, 168 N.J. 413, 423 n.1 (2001) (quoting L. 1993, c. 223, § 1).

32

ordinarily a remand should be required for resentencing." Carey, 168 N.J. at 424 (citing Miller, 108 N.J. at 122).

B.

We apply those principles to certain aspects of defendant's sentence in this appeal.

Defendant was sentenced for nineteen offenses committed in three separate criminal episodes. Ten of those offenses arose from the February 28, 2011 incident in Cherry Hill; six were based on the March 3, 2011 incident in Winslow Township; and two related to the March 29, 2011 incident in Gloucester Township involving the stolen car.

The trial court properly applied the Yarbough factors when it sentenced defendant to terms of incarceration running consecutively to the terms imposed for crimes committed in different criminal episodes. It took into account "the facts relating to the crimes and the following criteria":

> One, the crimes and their objectives were predominantly independent of each other. Two, the crimes involved separate acts of violence or threats of violence. Three, the crimes are committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior. Four, any of the crimes involved multiple victims. And five, the convictions for which the sentences are to be imposed are numerous.

33

The court determined that the crimes committed by defendant on February 28, 2011, March 3, 2011, and March 29, 2011 were "independent of each other," their objectives on each date "involved separate acts of violence or threats of violence," and "they were committed at different times and places."

The evidence supported the court's findings that the crimes committed in each criminal episode were independent of one another, that the objectives of those crimes were distinct from one another, that they involved separate acts of violence or threats of violence, and that they were committed at different times and in different locations. See Yarbough, 100 N.J. at 643-44; see also State v. Cassady, 198 N.J. 165, 181-82 (2009) (upholding the imposition of consecutive sentences based on the trial court's determination that the criminal episodes were independent of one another and stressing that "the sentencing court faithfully paired the Yarbough factors with the facts as found by the jury"); State v. Ghertler, 114 N.J. 383, 391-92 (1989) (reviewing the reasons advanced in imposing consecutive sentences and holding that "[t]he court's exercise of discretion to impose consecutive sentences was supported by a separate statement of reasons").

The court's analysis upon imposing a consecutive sentence for the first-degree kidnapping of the fourteen-year-old victim during the February 28,

34

2011 incident also satisfied Yarbough.[5]  That sentence was made consecutive to the sentences for the other first-degree kidnappings and other crimes defendant committed during that incident.  As the trial court found, the child and her sister were kidnapped approximately one hour before the first-degree kidnapping of her father and the third-degree criminal restraint of her mother. It was clearly within the trial court's discretion to impose a sentence for her kidnapping that was consecutive to defendant's sentence for the other crimes committed on that date.

In sentencing defendant to consecutive terms for offenses committed within a single criminal episode, however, the trial court set forth findings that do not satisfy Yarbough, warranting a remand for resentencing with respect to those offenses.

For his conviction of second-degree unlawful possession of a weapon in connection with the February 28, 2011 incident in Cherry Hill, the trial court imposed a sentence consecutive to defendant's sentences for first-degree kidnapping and other crimes committed in that incident.[6]  The court's findings

---

[5]  The trial court acknowledged that the thirteen-year-old child was also kidnapped, but did not impose a consecutive sentence for that offense.

[6]  By virtue of the court's decision to make defendant's sentence for unlawful possession of a weapon consecutive to the sentences imposed for the kidnapping offenses and other offenses, defendant's aggregate sentence was

35

in support of that consecutive sentence were limited to a comment that "[t]he elements of this offense are separate and distinct from the charges of kidnapping. The defendant possessed the weapon and did not have a permit for it, and there can be no free crimes."

Although unlawful possession of a weapon could be viewed as independent of other crimes committed with the weapon in some settings for purposes of Yarbough's third factor, see 100 N.J. at 644, nothing in N.J.S.A. 2C:44-5(a) or our case law compels such a result in every case. See, e.g., State v. Copling, 326 N.J. Super. 417, 441-42 (App. Div. 1999) (holding that the defendant's sentences for murder and unlawful possession of a weapon should run concurrently, because both statutes under which defendant was convicted sought to protect the same victims, and the victims in the case "were part of the group of victims in society whom the possession statute sought to protect"). On remand, the court should reconsider its determination that defendant's sentence for unlawful possession of a weapon in that incident should be consecutive to his sentences for other crimes committed on the same date. The court should provide a more detailed explanation of its reasoning, as Yarbough requires.

---

eight years longer than it would otherwise have been, and his term of parole ineligibility was increased by four years.

36

For the March 3, 2011 incident in Winslow Township, the trial court acted within its discretion when it imposed sentences for first-degree robbery and fourth-degree unlawful taking of a means of conveyance that were consecutive to defendant's sentences for other offenses. The court, however, imposed a sentence for defendant's conviction of second-degree unlawful possession of a weapon to run consecutively to defendant's sentences for first-degree robbery and other offenses committed in the same criminal episode.[7] Its findings were limited to a statement that "[t]he elements of this [offense] are separate and distinct from the charge of armed robbery, and there can be no free crimes." That determination does not meet the requirements of Yarbough, and should be reconsidered on remand. See 100 N.J. at 643-44.

Finally, the court should reconsider on remand its imposition of consecutive sentences for defendant's convictions of second-degree unlawful possession of a weapon and fourth-degree unlawful taking of a means of

---

[7] By virtue of the court's decision to make defendant's sentence for unlawful possession of a weapon consecutive to the sentence imposed for the robbery offense, defendant's aggregate sentence was eight years longer than it would otherwise have been, and his term of parole ineligibility was increased by four years.

conveyance, arising from the March 29, 2011 incident in Gloucester Township.[8]

As we have previously observed, the sentencing court's focus "should be on the fairness of the overall sentence." Miller, 108 N.J. at 121. In resentencing defendant on remand, the trial court should consider the fairness of the aggregate sentence imposed for the eighteen offenses as to which defendant's convictions have been affirmed. See State v. Abdullah, 184 N.J. 497, 515 (2005) (reminding our courts "that when imposing either consecutive or concurrent sentences, '[t]he focus should be on the fairness of the overall sentence,' and that they should articulate the reasons for their decisions with specific reference to the Yarbough factors"). Thus, we caution the court on remand to consider the overall sentence -- a necessary feature in any Yarbough analysis.[9]

---

[8] By virtue of the court's decision to make defendant's sentence for unlawful taking by a means of conveyance consecutive to his sentence for unlawful possession of a weapon, defendant's aggregate sentence was increased by one year.

[9] We do not foreclose the parties from making any argument on remand regarding the court's imposition of consecutive or concurrent sentences.

V.

The judgment of the Appellate Division is affirmed in part and reversed in part, and the matter is remanded to the trial court for further proceedings in accordance with this opinion.  We retain jurisdiction.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, FERNANDEZ-VINA, and TIMPONE join in JUSTICE PATTERSON'S opinion.  JUSTICE ALBIN filed an opinion, dissenting in part.  JUSTICE SOLOMON did not participate.

State of New Jersey,

Plaintiff-Respondent,

v.

Keith V. Cuff,

Defendant-Appellant.

JUSTICE ALBIN, dissenting in part.

In February 2011, defendant and an accomplice entered a family's home to commit a robbery. Alone inside the house were four children, two of whom were asleep. The men bound the hands of the two awake children, ages thirteen and fourteen, and left them in an upstairs room. When the children's parents came home, the men confronted them at gunpoint and forced the father to hand over two thousand dollars. The men then tied the father's and mother's hands behind their backs and left the home. The father managed to loosen his hands from the zip tie and then untie the hands of his wife and children.

With the approval of both the State and defendant, the trial court charged the jury on first-degree kidnapping and the lesser-included offense of second-

degree kidnapping.  A defendant is guilty of first-degree kidnapping if the State proves beyond a reasonable doubt that "he unlawfully confine[d] another for a substantial period" for the purpose of committing a crime, such as robbery, and did not release the victim unharmed or in a safe place prior to apprehension.  N.J.S.A. 2C:13-1(b)-(c); State v. Federico, 103 N.J. 169, 174 (1986).  If the defendant "releases the victim unharmed and in a safe place prior to apprehension," then he is guilty only of second-degree kidnapping. N.J.S.A. 2C:13-1(c).

The court submitted the written jury instructions and the verdict sheet to the jury.  The written instructions referred to first-degree kidnapping and second-degree kidnapping, and gave the elements for both charges.  Those instructions also referred to first-degree robbery and second-degree robbery, and gave the elements for both charges.  Although the verdict sheet did not refer to the crimes by degrees, it referred to the crimes by their elements. Thus, the jury was able to correlate the written instructions to the verdict sheet and see that the crimes listed on the verdict sheet -- identified by their elements -- included first- and second-degree robbery and first-degree kidnapping.  No place on the verdict sheet listed second-degree kidnapping by its elements or in any other manner.  Unsurprisingly, after beginning its deliberations, the jury sent a note to the court asking, "[i]f applicable, how do

2

we denote second degree on a charge in the verdict book?" The question had to refer to the second-degree kidnapping charge because the only other first-degree crime charged -- robbery -- included lines on the verdict sheet that allowed the jury to find second-degree robbery.

After conferring with counsel, the court responded without correcting the deficient verdict sheet or answering the jury's question:

> [M]y answer to you is this. You answer the questions as they are posed on the verdict sheet. Okay? Each individual question as posed. You, the jury, are not to be concerned about the degree of the crime. That is in the Court's domain. So, you answer the questions as posed, as we had talked about, you know, some of them, you -- depending upon what your answer is to one, you may go onto the next one, you may skip the next one, as we discussed when I was giving you my final instructions.

The jurors' dilemma was that, on one hand, they had written jury instructions advising them to return a verdict of second-degree kidnapping if the State failed to prove that defendant did not release the victims unharmed or in a safe place prior to apprehension but, on the other hand, they had a verdict sheet that did not permit them to return a guilty verdict for second-degree kidnapping.

In the absence of a place to indicate second-degree kidnapping, the inadequate verdict form may very well have led the jury to convict defendant

3

of either a higher- or lesser-degree crime than the second-degree kidnapping that they might otherwise have returned.

None of the parties suggested at trial, before the Appellate Division, or in the briefing before this Court that there was not a rational basis for charging second-degree kidnapping. Presumably, if this was a meritorious issue, the State would have raised it at the trial and appellate levels or in its briefing before this Court. Only in oral argument before this Court was the "no rational basis" contention raised for the first time -- and now the majority has fastened to this argument to render harmless the patently defective verdict sheet in this case.

I respectfully dissent because the trial court properly charged on second-degree kidnapping and the verdict sheet did not allow the jury to return a verdict on that count. That omission constituted plain error -- an error clearly capable of producing an unjust result. See R. 2:10-2.

I.

A.

We granted defendant's petition for certification to address the issue "of the verdict sheet's omission of the charge of second-degree kidnapping." 234 N.J. 315 (2018). That was our shorthand way of identifying the issue presented by defendant: whether "the verdict sheet and the trial court's

4

erroneous response to the jury's question precluded the jury from convicting defendant of second-degree kidnapping."[1]  The State did not file a cross-petition arguing that the trial court did not have a rational basis to charge second-degree kidnapping.  None of the parties disputed the propriety of the trial court charging the jury on second-degree kidnapping.  The State did not raise a challenge to the charge before the Appellate Division or in its briefing to this Court.  This Court did not grant certification on whether there was a rational basis to charge second-degree kidnapping.  "The jurisdiction of appellate courts rightly is bounded by the proofs and objections critically explored on the record before the trial court by the parties themselves."  State v. Robinson, 200 N.J. 1, 19 (2009).  The majority has declined to adhere to this principle.

To save a verdict fatally compromised by a defective verdict sheet, the majority reaches for a newly found issue -- whether there was a rational basis to return a verdict of second-degree kidnapping.  The majority's argument is that if the court wrongly gave the lesser-included charge, then the deficient verdict sheet is rendered harmless.  The trial court, however, charged the jury on the lesser-included offense of second-degree kidnapping -- without

---

[1]  Defendant's petition for certification adopted the arguments he presented before the Appellate Division.  This was one of those arguments, and the one on which we granted certification.

5

objection from any party -- because there was a rational basis for doing so. Whether defendant "release[d] the victim[s] unharmed and in a safe place prior to apprehension," N.J.S.A. 2C:13-1(c), was a quintessentially factual issue for the jury to resolve. It was for the jury to determine whether leaving the victims in their own home, despite the binding of their hands, constituted releasing them unharmed and in a safe place.

N.J.S.A. 2C:13-1(c) of our kidnapping statute is a product of the Final Report of the New Jersey Criminal Law Revision Commission. 1 The New Jersey Penal Code: Final Report § 2C:13-1 at 57 (Criminal Law Revision Comm'n 1971). The commentary to that statute explains that the purpose of distinguishing between first-degree and second-degree kidnapping is "to maximize the kidnapper's incentive to return the victim alive." 2 The New Jersey Penal Code: Final Report § 2C:13-1 cmt. 7 at 187 (quoting Model Penal Code 15-16 (Am. Law Inst., Tentative Draft No. 11, 1960)). By the second-degree grading provision in the kidnapping statute, a defendant is incentivized to release the victim unharmed and in a safe place.

On the record before us, no one disputes that there was a rational basis for the jury to return a verdict of first-degree kidnapping. But that does not mean that a rational juror could not have returned a verdict of second-degree kidnapping, finding that the victims were released unharmed and in a safe

6

place -- their home -- even though their hands were tied.  The majority has decided to assume the role of factfinder -- a role it is forbidden to play in a criminal trial.  Our Court has repeatedly stated that "it is the jury, and the jury alone, that determines the facts" and that the jury's factfinding duty is "nondelegable and nonremovable."  See, e.g., State v. Ingenito, 87 N.J. 204, 211 (1981).  "The responsibility of the jury in the domain of factual findings . . . is so pronounced and preeminent" that a jury may "refuse to return a verdict in spite of the adequacy of the evidence" -- even "in the face of overwhelming evidence of guilt."  Id. at 211-12.  The majority has given short shrift to these injunctions by delegating to itself the factfinding role in this case.

B.

Because the trial court correctly charged the jury on second-degree kidnapping, the jury had a right to a correct verdict sheet -- a verdict sheet that allowed the return of a verdict on second-degree kidnapping.  The verdict sheet is an "essential component" in guiding the jury through the deliberative process.  State v. Galicia, 210 N.J. 364, 387 (2012).  As in this case, an incomplete and inaccurate verdict sheet will thwart the jury in determining the proper grade of guilt.  See R. 3:19-1(b) ("A written verdict sheet shall be submitted to the jury . . . to facilitate the determination of the grade of the

7

offense under the Code of Criminal Justice."). After the court instructs the jurors on the law, "they are left alone with the directions on the verdict form." State v. Nelson, 173 N.J. 417, 449 (2002).

Here, the jurors faced a maddening prospect. The court verbally charged on second-degree kidnapping, then provided the jury with a written charge of its instructions -- and yet the verdict sheet did not allow the jury to return a verdict on second-degree kidnapping. When the confused jury sent a message to the court asking how it could "denote second degree on a charge in the verdict book," the court told the jury to "answer the questions as they are posed on the verdict sheet." But, of course, nothing on the verdict sheet referred to second-degree kidnapping.

The Attorney General sensibly argued that the omission of second-degree kidnapping on the verdict sheet prejudiced the State because the error may have encouraged the jury to return convictions on lesser offenses and even acquittals on other first-degree kidnapping counts in the indictment. By that same logic, however, defendant was equally prejudiced. The defective verdict sheet may very well have encouraged the jury to return three first-degree kidnapping convictions in the absence of a second-degree kidnapping option. For example, during the February 2011 incident, the father and mother both had their hands bound and were left in their home after the robbery. The

8

father's and mother's scenarios were virtually indistinguishable.  In the absence of a second-degree kidnapping option, however, the jury returned a guilty verdict of first-degree kidnapping in the case of the father and a guilty verdict of disorderly persons false imprisonment in the case of the mother.  The defective verdict sheet was clearly capable of causing a compromised verdict and therefore constituted plain error.  See R. 2:10-2 (permitting an appellate court to "notice plain error" when that error "is of such a nature as to have been clearly capable of producing an unjust result").

Defendant faced extremely prejudicial consequences as a result of the defective verdict sheet.  The difference in the sentencing ranges for first- and second-degree kidnapping are significant:  the range for first-degree kidnapping is fifteen to thirty years' imprisonment, whereas the range for second-degree kidnapping is only five to ten years' imprisonment.  N.J.S.A. 2C:13-1(c)(1); N.J.S.A. 2C:43-6(a)(2).

Defendant was sentenced to two consecutive twenty-three-year terms on two first-degree kidnapping convictions and to a concurrent twenty-three-year term on the third first-degree kidnapping conviction.  Thus, on three first-degree kidnappings, defendant was sentenced to an aggregate forty-six-year term of imprisonment, in addition to consecutive sentences imposed for other convictions.  Had defendant been convicted of second-degree kidnappings, his

maximum sentence on those charges would have been twenty years -- two ten-year terms to run consecutively, and one ten-year term to run concurrently. The first-degree kidnapping sentences comprise more than half of the entirety of the terms of imprisonment defendant must serve for his crimes.

Given the offenses committed by defendant, few may be sympathetic to his plight. But under our constitutional framework, defendant was entitled to a fair trial -- regardless of the nature of those offenses. Defendant had a right to fair consideration of all lesser-included offenses rationally based in the record. The defective jury verdict form deprived him of that right. Defendant therefore should receive a new trial.

## II.

I respectfully dissent from the majority's determination that the record did not provide a rational basis for the trial court to charge on second-degree kidnapping. I concur with the sentencing portion of the majority's opinion.

10